# EXHIBIT C

Not Reported in F.Supp.2d
(Cite as: 2002 WL 1560022 (S.D.N.Y.))

Page 1

H
Only the Westlaw citation is currently available.

United States District Court, S.D. New York.

Holly MCMUNN, Plaintiff,
v.
MEMORIAL SLOAN-KETTERING CANCER CENTER, Defendant.

No. 97 Civ 5857(NRB).

July 15, 2002.

Ms. Holly McMunn, Park West Station, New York, New York, Plaintiff, pro se.

Edward A. Brill, Proskauer Rose LLP, New York, New York, for Defendant.

MEMORANDUM AND ORDER

BUCHWALD, J.

*1 Plaintiff Holly McMunn brought this action against defendant Memorial Sloan-Kettering Cancer Center ("Memorial") alleging discrimination in violation of, *inter alia,* the Americans with Disabilities Act. In a Memorandum and Order dated March 27, 2002, we found that Ms. McMunn's conduct during the pretrial phase of this litigation amounted to a fraud upon this Court. *McMunn v. Memorial Sloan-Kettering Cancer Ctr.,* 191 F.Supp.2d 440, 446 (S.D.N.Y.2002). Accordingly, we dismissed this action with prejudice and awarded a $20,000 monetary sanction against Ms. McMunn to be paid to Memorial. *Id.* at 441. On April 30, 2002, Ms. McMunn both appealed our decision and moved for an order granting a stay of the judgment pending appeal. We denied her motion for a stay. *McMunn v. Memorial Sloan-Kettering Cancer Ctr.,* 2002 WL 1380016 (S.D.N.Y. June 25, 2002). Now, Ms. McMunn moves for leave to proceed on appeal in forma pauperis pursuant to Fed. R.App. P. 24.

Ms. McMunn submitted the affidavit required by Fed. R.App. P. 24(a)(1) and, if her statements were to be believed, would almost certainly entitle her to the relief she seeks. However, we have previously found that Ms. McMunn had repeatedly dissembled and concealed information about her financial condition in the course of this litigation. *McMunn,* 191 F.Supp.2d at 446-61. For example, we found that Ms.

McMunn "intentionally and in bad faith attempted to deceive ... the Court into believing that she is homeless" "for the purpose of unfairly bolstering her claim that her termination by Memorial has left her destitute." *Id.* at 458, 460; *see also id.* at 446-49 (finding that Ms. McMunn intentionally concealed the existence of one of her credit cards); *id.* at 454-58 (finding that Ms. McMunn sold her apartment in a "sham transaction"). In light of these findings, we simply cannot credit the truthfulness of Ms. McMunn's affidavit in support of the instant motion and, accordingly, deny her leave to proceed in forma pauperis.

IT IS SO ORDERED.

2002 WL 1560022 (S.D.N.Y.)

END OF DOCUMENT

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

**H**
Only the Westlaw citation is currently available.

United States District Court, N.D. Illinois, Eastern Division.

FIDELITY NATIONAL TITLE INSURANCE COMPANY OF NEW YORK, Plaintiff,
v.
INTERCOUNTY NATIONAL TITLE INSURANCE COMPANY, et al., Defendants.

No. 00 C 5658.

July 2, 2002.

Plaintiff moved for sanctions against individual defendant, based on allegations of improper conduct related to litigation. The District Court, Conlon, J., held that: (1) fair notice was required to sanction defendant for alleged improper interference with opposing party's attorney-client relationship; (2) extraordinary circumstances did not exist supporting sanctions based on defendant's alleged communications with third-party defendant; (3) defendant authored threatening letter to opposing counsel; (4) defendant provided false testimony under oath; and (5) sanction of dismissal and award of attorney fees and expenses was warranted.

Motion granted.

**[1] Federal Civil Procedure** ☞2795
170Ak2795 Most Cited Cases

Evidence was insufficient to support finding that defendant authored anonymous memorandum and letter to opposing party, as required on motion for sanctions for witness tampering or interference with attorney-client relationship; although comparison of text of e-mail by defendant and anonymous letters supported reasonable inference defendant was author, no evidence showed that defendant was only one privy to information in letters, and no corroborating evidence was offered. Ill. Rule of Prof. Conduct 4.2.

**[2] Federal Civil Procedure** ☞2828
170Ak2828 Most Cited Cases

Fair notice was required to sanction defendant for alleged improper interference with plaintiff's attorney-client relationship, on plaintiff's motion for sanctions for witness tampering under consideration by district court. U.S.C.A. Const.Amend. 5; Ill. Rule of Prof. Conduct 4.2.

**[3] Federal Civil Procedure** ☞2795
170Ak2795 Most Cited Cases

Extraordinary circumstances warranting imposition of sanctions on party defendant did not exist, based on party defendant's alleged communications with third-party defendant; communication was not threatening or abusive, but expressed an opinion about counsel, third-party defendant had initiated contact to discuss litigation on several other occasions, no court order restricted defendant from contacting third-party defendant, and contact between parties was not barred by ethical rules for attorneys. Ill. Rule of Prof. Conduct 4.2

**[4] Federal Civil Procedure** ☞2795
170Ak2795 Most Cited Cases

**[4] Federal Civil Procedure** ☞2829
170Ak2829 Most Cited Cases

Defendant authored threatening letter to opposing counsel, supporting motion for sanctions; although relative fluorescence unit (RFU) threshold was 75, rather than 200 threshold used by FBI, on DNA testing of envelope glue, 75 was within machine manufacturer's recommendations for RFU levels, and defendant's expert did not discover errors in opposing party's validation data.

**[5] Federal Civil Procedure** ☞1451
170Ak1451 Most Cited Cases

**[5] Federal Civil Procedure** ☞2795
170Ak2795 Most Cited Cases

Defendant provided false testimony under oath at deposition by opposing party, in violation of directive of trial court that anonymous, threatening communications were intolerable, as would support sanctioning defendant; defendant authored letter, letter threatened opposing counsel with physical harm, designed to intimidate and disrupt opposing counsel, clear and convincing evidence established that defendant authored the letter, and defendant, under oath at deposition, denied authoring the letter.

**[6] Federal Civil Procedure** ☞1451
170Ak1451 Most Cited Cases

**[6] Federal Civil Procedure ⚖2820**
170Ak2820 Most Cited Cases

Sanction of dismissal of defendant's counterclaims, with prejudice, and award of reasonable attorney fees and expenses to opposing party was warranted; lesser sanctions would be insufficient, defendant sent opposing counsel threatening letter to disrupt action, provided false testimony under oath at deposition regarding letter, letter was sent following magistrate's warning about impropriety of anonymous letters, and letter expressed contempt for directive by stating, "You can hand this over to the federal authorities too!"

MEMORANDUM OPINION AND ORDER

CONLON, District J.

*1 Fidelity National Title Insurance Co. ("Fidelity") moved for sanctions against defendant Terry Cornell based on allegations of improper conduct in connection with this litigation. The court referred the motion to a magistrate judge pursuant to 28 U.S.C. § 636, Fed.R.Civ.P. 72, and Local Rule 72.1. The magistrate judge recommended granting Fidelity's motion for sanctions against Cornell in part. *See Fidelity v. Intercounty*, 2002 WL 377728 (N.D.Ill. Mar.8, 2002). Cornell objects under Fed.R.Civ.P. 72.

BACKGROUND

The magistrate judge's report and recommendation contains detailed factual findings established during several days of evidentiary hearings. *See Fidelity*, 2002 WL 377728, at *1-16. Specific disputes over the magistrate judge's factual findings are discussed within the context of Cornell's objections.

In January 2001, this court referred Fidelity's emergency motion to compel discovery to a magistrate judge. The substance of that motion concerned anonymous letters received by Fidelity's counsel and employees. The letters were crude, vulgar, and threatening. The magistrate judge ordered the anonymous letters filed under seal, and referred the matter to the United States Attorney. At the hearing, all parties and attorneys denied sending anonymous letters. The magistrate judge expressed her disapproval of sending anonymous, threatening letters. One week later, an anonymous memorandum was sent to Thomas Simonton, Fidelity's senior vice-president. In addition, Edwin Thomas, Fidelity's counsel, and Fidelity employees received anonymous letters. *See* Pl. Mot. for Sanctions, Ex. G (attaching eight anonymous letters). Three specific letters are the subject of Fidelity's motion for sanctions.

*First,* an undated letter to Simonton:
Dear Tom:
I really hope that you and your family really have a nice holiday ... [Y]ou have to put yourself in our shoes. The tide has turned in our favor. We have both gotten jobs and will continue to fight Fidelity as they have wronged us. But let me tell you something. Fidelity is not your friend. As a matter of fact, they blamed this mess on you and Larry Capriotti ... Be careful of Ed Thomas. He has told several attorneys that they were going to fire you, but your [sic] saved for now because of the lawsuit. I know that you may not believe me and if you want, call me ... In regards to your deposition on January 10th. Please tell the truth... We will be at the deposition ... Thomas is setting you up for the fall ... Remember we still are friends, contrary to what you think or have heard ... Thomas, all he cares about is running up fees. Please call.
Pl. Mot. for Sanctions, Ex. G-2.

*Second,* an anonymous January 15, 2001 memorandum to Simonton:
Tom,
As per our discussion, here is the information that I promised you:
1. Ed Thomas told Sandy Lourie that we should not work with you, as you were part of the Larry Capriotti scheme. In addition, you were going to be fired.
*2 2. Ed Thomas called Ed Genson and said that with the Intercounty lawsuit just gave Simonton job insurance until the lawsuit was over.
*Id.,* Ex. G-1.

*Third,* a February 8, 2001 anonymous letter to Thomas that states, in relevant part:
I also heard that you have two bodyguards, what a joke! Who would want to beat you up? You're a pussy. If someone wanted to get you it would be easy, but why would someone want to waste their time with you. Did you have a good time at Cavanaughs? I saw you there. Now, if someone was going to hurt you, don't you think that it would have been done?
*Id.,* Ex. H. The letter threatened Thomas with a federal indictment for perjury and obstruction of justice, and contained abusive and vulgar language.

At his deposition, Cornell denied sending all three letters. During a break, Fidelity confiscated a drinking cup that Cornell used at the deposition. Fidelity conducted DNA testing on the saliva from Cornell's cup. Fidelity asserts DNA extracted from

the glue sealing the February 8th envelope matched DNA extracted from the cup. Fidelity moved for sanctions against Cornell, asserting perjury, witness tampering, defamation, and interference with the judicial process. Specifically, Fidelity argued that Cornell's counsel, Myron Cherry, improperly contacted Simonton through Cornell to interfere with Simonton's attorney-client relationship with Thomas; that Cherry and Cornell attempted to improperly influence Simonton's testimony; that Cornell engaged in bad faith conduct by sending threatening letters to Thomas and other Fidelity employees; and that Cornell provided false testimony under oath at his deposition. Fidelity asserted DNA evidence from the February 8th letter established Cornell as the source of all threatening letters.

This court referred Fidelity's motion for sanctions against Cornell to the magistrate judge under 28 U.S.C. § 636. The magistrate judge conducted evidentiary hearings on December 3 and 4, 2001, and January 7, 2002. In addition, the magistrate judge permitted Cornell to conduct discovery to prepare for the evidentiary hearings. Discovery with respect to production of DNA evidence proceeded pursuant to Illinois Supreme Court Rule 417, absent a federal discovery rule on production of DNA evidence. Cornell was permitted to depose three Fidelity investigators who were involved in the chain of custody of the February 8th letter and Cornell's drinking cup.

In her report and recommendation, the magistrate judge determined by clear and convincing evidence that Cornell: (1) contacted Simonton for the purpose of interfering with Simonton's relationship with Thomas and influencing Simonton's testimony; (2) sent several anonymous communications to Simonton; (3) sent Thomas the February 8th letter; (4) lied under oath in affidavits, deposition testimony, and at evidentiary hearings; (4) caused his counsel to misrepresent to the court that Cornell had not sent the anonymous letters; and (5) continued to send anonymous letters after the January 9th hearing. The magistrate judge recommended Fidelity's motion to disqualify Cherry be denied, but that Fidelity's motion for sanctions against Cornell be granted. As sanctions, the magistrate judge recommended that Cornell's counterclaims against Fidelity and third-party complaint against Simonton be dismissed with prejudice; that the jury be informed Cornell improperly interfered with Simonton's relationship with Thomas and that Cornell lied under oath; that Fidelity be awarded attorneys' fees and costs; and that the matter be referred to the United States Attorney.

*3 Neither party objects to the magistrate judge's finding that Cherry did not improperly communicate with Simonton in violation of Rule 4.2 of the Illinois Rules of Professional Conduct. Accordingly, Fidelity's motion to disqualify Cherry is denied. See Lorentzen v. Anderson Pest Control, 64 F.3d 327, 330 (7th Cir.1995). Cornell objects to the remaining findings of fact, conclusions of law, and recommendations for sanctions.

DISCUSSION
I. Standard of Review

The court's review of a magistrate judge's recommendation on a dispositive motion is *de novo*. 28 U.S.C. § 636(b)(1). A magistrate judge's recommendation for sanctions must be reviewed *de novo*. Retired Chicago Police Assn. et al. v. City of Chicago et al., 76 F.3d 856, 869 (7th Cir.1996); Royal Maccabees Life Ins. Co. v. Malachinkis, No. 96 C 6135, 2001 WL 290308, at *7 (N.D.Ill. Mar.20, 2001); R & B Group, Inc. v. BCI Burke Co., Inc., No. 96 C 2620, 1999 WL 754632, at *3 (N.D.Ill. Sept.9, 1999); Branch v. City of Elmhurst, No. 96 C 3824, 1998 WL 102630, at *1 (N.D.Ill. Feb.25, 1998). The *de novo* standard applies to the magistrate judge's findings of fact and conclusions of law. Rajaratnam v. Moyer, 47 F.3d 922, 925, n. 8 (7th Cir.1995); Zoch v. City of Chicago, No. 94 C 4788, 1999 WL 92896, at *1 (N.D.Ill. Feb.17, 1999).

*De novo* review does not require a new hearing, but simply means the court must give "fresh consideration to those issues to which specific objections have been made." Rajaratnam v. Moyer, 47 F.3d 922, 925 n. 8 (7th Cir.1995). The district court is not required to conduct another hearing to review the magistrate judge's credibility determinations. Goffman v. Gross, 59 F.3d 668, 671 (7th Cir.1995). The district court may accept, reject, or modify the recommendations, receive further evidence, or recommit the matter to the magistrate judge with instructions. See Fed.R.Civ.P. 72(b).

The magistrate judge adopted a clear and convincing standard of proof because the sanctions requested punitive and remedial orders. See Danis v. USN Comm., Inc., No. 98 C 7482, 2000 WL 1694325, at *34 (N.D.Ill. Oct.23, 2000) (adopting a clear and convincing standard for review of Fed.R.Civ.P. 37 request for default judgment). Fidelity's allegations against Cornell suggest criminal behavior--witness tampering, harassment, perjury, and interference with the judicial process. The severity of the allegations warrant a heightened standard of proof. See Shepherd v. Am. Broadcasting Co., Inc., 62 F.3d 1469, 1472,

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

1477 (D.C.Cir.1995) (allegations of criminal behavior necessitate the clear and convincing standard); _Munn v. Memorial Sloan-Kettering Cancer Ctr.,_ 191 F.Supp.2d 440, 445 (S.D.N.Y.2002) (adopting a clear and convincing standard to protect the non-movants' rights). A court's imposition of default judgment is analogous to a civil contempt sanction, which is subjected to the clear and convincing standard. _Shepherd,_ 62 F.3d at 1477 (sanction of dismissal serves the same purpose as civil contempt; clear and convincing evidence standard should apply); _Crowe v. Smith,_ 151 F.3d 217, 240 (5th Cir.1998) (adopting clear and convincing standard for sanctions involving attorney disqualification); _see also Gates Rubber Co. v. Bando Chemical, Indus.,_ 167 F.R.D. 90 (D.Colo.1996). Neither party objects to use of the clear and convincing standard. Thus, the court reviews the record for clear and convincing evidence of misconduct.

II. Inherent Authority to Impose Sanctions

*4 A federal court has inherent authority to sanction a litigant for bad faith conduct. The inherent authority is "governed not by rule or statute but by the control necessarily vested in courts to manage their own affairs so as to achieve the orderly and expeditious disposition of cases." _Chambers v. NASCO, Inc.,_ 501 U.S. 32, 42, 111 S.Ct. 2123, 115 L.Ed.2d 27 (1991). Sanctions such as shifting attorneys' fees and default judgment may be imposed under the court's inherent authority. _Id._ at 44-45; _Diettrich v. Northwest Airlines, Inc.,_ 168 F.3d 961, 964 (7th Cir.1999) (inherent power "permit[s] a court to impose the ultimate sanction of a grant of judgment").

III. Interference with the Attorney-Client Relationship and Witness Tampering

A lawyer may not ethically communicate with a represented party unless opposing counsel consents. Ill. Rule of Prof. Conduct 4.2; _Weibrecht v. Southern Illinois Transfer, Inc.,_ 241 F.3d 875, 883 (7th Cir.2000). The magistrate judge determined Cornell's counsel, Myron Cherry, did not violate Rule 4.2 because Cherry did not contact Tom Simonton, Fidelity's vice-president and a represented party, directly or through Cornell. The findings of the magistrate judge are unchallenged.

The magistrate judge determined Cornell improperly interfered with the attorney-client relationship between Thomas and Simonton, and improperly influenced Simonton's testimony. Cornell objects to the magistrate judge's factual findings that he authored two anonymous letters to Simonton. Cornell asserts he was not given fair notice that the magistrate judge was considering sanctions for improper interference with the attorney-client relationship. Cornell objects to the magistrate judge's conclusion of law that interference with the attorney-client relationship is bad faith conduct warranting sanctions. Finally, Cornell objects to the magistrate judge's conclusion that his e-mail and letters improperly influenced Simonton's testimony.

A. Findings of Fact

[1] The magistrate judge determined Cornell was the author of the anonymous January 15th memorandum and the anonymous letter to Simonton. The finding was based on a comparison of the text of the letters with Cornell's January 18th e-mail to Alexander Lourie, an attorney representing Cornell not of record in this action. Cornell objects to that finding. The e-mail from Cornell to Lourie on January 18, 2001 states:

Hey Sandy,

We need your help. Pursuant to Mike Cherry's insistance [sic], Sue and I told Tom Simonton that Ed Thomas was not his friend. I also asked him why would he wants [sic] Thomas representing him when he (Thomas) isn't going to look out for his (Tom's) best interests. Simonton said that you are the only lawyer that he trusts in this who he trusts [sic] in this whole mess. Simonton said that he wanted to know if was [sic] ok to talk to you. We said that we have no problem with him talking to you. We told Simonton that Ed Thomas said that he thought that Simonton was in this with Capriotti. When we were talking in the Spring, Thomas told you not to deal with Simonton. Thomas also said that Simonton was going to get fired. Tom says that this goes along with everything he's heard and just wants to hear it from someone. If he calls you, please talk to him. If you [sic] firm wants to represent him, go for it. (he's looking for a lawyer)

*5 TC

Pl. Mot. for Sanctions, Ex. K. At 6:50 p.m. that day, Lourie sent the following response to Cornell:

Terry,

I am out for another week.

Also, I cannot talk to him, because I still want to be able to say I represent you guys in order to maintain attorney client privilege on stuff we talk about. I therefore would have an ethical problem talking to him (just like Mike), and while I am sure everything is ok, I do not want to get caught in a trap that could screw that up or give something for Ed to take me to the ARDC about since Tom

technically is still represented by Ed.
Having said that, however, I have no problem confirming to you that Ed told me that Tom was in deep trouble and that Fidelity thought that he was acting on his own. He also told me that he wondered whether Tom was on the take from somewhere.
If you have any other questions, please feel free to contact me via e-mail or phone and I will try to respond ASAP. However, I think it is not good for you or for me to be talking to Tom.
Sandy

*Id.* Cornell forwarded the e-mail messages to Simonton the same day.

A comparison of the text of the e-mail and the anonymous letters alone is insufficient to establish by clear and convincing evidence that Cornell is the author of the anonymous letters. The anonymous letters and e-mail discuss similar subjects: Thomas' bias against Simonton; Lawrence Capriotti and Simonton would be blamed for improper conduct; and Fidelity would fire Simonton. Viewed in conjunction with the proximity in time between the anonymous January 15th memorandum and Cornell's January 18th e-mail, the similarities support a reasonable inference Cornell authored the memorandum. Nevertheless, the record is devoid of evidence that the anonymous letters and memorandum contain information privy only to Cornell. Cornell's January 18th e-mail to Simonton refers to Peloza *and* Cornell's discussion with Simonton. Because the anonymous letters and the e-mail contain similar statements, a reasonable inference could be drawn that Peloza had knowledge of the information in the anonymous letters. Thus, Peloza could have authored the anonymous letters to Simonton.

Furthermore, Simonton did not testify at the evidentiary hearings. Fidelity failed to present evidence Simonton attributed references in the anonymous letters such as "Please Call" to Cornell. Pl. Mot. Sanctions, Ex. G-1, G-2. No evidence was presented that Simonton communicated with the author of the anonymous letters. Indeed, the anonymous January 15th memorandum suggests Simonton would know the author's identity. The memorandum states: "As per our discussion, here is the information I promised you." *Id.* at G-2. Fidelity did not present evidence Simonton attributed the personal nature of the communications to Cornell. The magistrate judge relied on a particular statement in the anonymous letter, "We have both gotten jobs," to refer to Cornell and Peloza. *Id.* No evidence was presented that Cornell or Peloza had recently obtained employment. The anonymous letter states: "We will be at [Simonton's] deposition." *Id.* at G-2. Fidelity did not offer evidence about the identity of individuals who attended Simonton's deposition. The January 15th memorandum refers to comments Thomas made to Lourie. *Id.* at G-1. At the hearing, Fidelity did not elicit testimony from Lourie concerning his disclosure of Thomas' comments to anyone. At the evidentiary hearing, Cornell was the only witness who testified with respect to the two anonymous letters; he denied sending the letters.

*6 The clear and convincing standard requires proof falling between standards of preponderance of the evidence and beyond a reasonable doubt. <u>Brown v. Bowen, 847 F.2d 342, 345-46 (7th Cir.1988)</u>. The only evidence presented to establish that Cornell authored the anonymous letters was Fidelity's comparison of the text of the letters with Cornell's e-mail. *See* Tr. at 137-141. That inferential evidence is insufficient under a clear and convincing standard. Fidelity did not independently corroborate any statement in the anonymous letters to demonstrate Cornell was the author. The recommended sanctions against Cornell are severe--an adverse jury instruction and default judgment on his third-party complaint. Consequently, the court must have clear and convincing evidence that Cornell authored the letters to impose the recommended sanctions. The record evidence does not support that finding. Accordingly, the magistrate judge's finding that Cornell authored the anonymous January 15th memorandum and the anonymous letter to Simonton is not adopted.

B. Conclusions of Law

The magistrate judge determined Cornell improperly interfered with Simonton and Thomas' attorney-client relationship. Cornell's e-mail and letters informed Simonton that Thomas was not looking out for his best interests; Thomas was only interested in legal fees. Mot. Sanctions, Ex. C. Cornell asserts the impropriety of his communications with Simonton was never at issue. Cornell objects to the magistrate judge's conclusion that he can be sanctioned for improper interference with the attorney-client relationship. Cornell objects to the magistrate judge's conclusion that the e-mail and letters improperly influenced Simonton's testimony. The court reviews the magistrate judge's conclusion of law *de novo.*

[2] At the outset, Cornell asserts that issues of whether he improperly interfered with the attorney-client relationship and improperly influenced Simonton's testimony were not the subject of

Fidelity's sanctions motion. A court must comply with the mandates of due process in invoking its inherent power to sanction. Chambers, 501 U.S. at 50. Under the Fifth Amendment's due process clause, the court must afford a defendant fair notice and an opportunity to respond before imposing sanctions. In re Hancock, 192 F.3d 1083, 1086 (7th Cir.1999); Larsen v. City of Beloit, 130 F.3d 1278, 1286-87 (7th Cir.1997). In Larsen, the Seventh Circuit reversed the district court's imposition of sanctions pursuant to its inherent powers because the court did not give the plaintiff notice and an opportunity to respond. 130 F.3d at 1287. In In re Rimsat, 212 F.3d 1039, 1045 (7th Cir.2000), the Seventh Circuit held a party must receive notice about the particular conduct that is improper before a court can impose sanctions. Sanctions could not be imposed unless the opposing party had notice of the specific conduct that the court considered sanctionable and had an opportunity to respond. Id. at 1045-46.

*7 Fidelity's motion did not request sanctions for Cornell's improper interference with attorney-client relations. Pl. Mot. Sanctions at p. 1, 7-9. Instead, Fidelity sought to disqualify Cherry for a purported violation of Illinois Rule of Professional Conduct 4.2. The evidentiary hearing transcript reveals Cornell's e-mail with Simonton was at issue only to the extent it was sent at Cherry's direction. Tr. at 5-8, 131-38. At the hearings, the focus of Cornell's conduct concerned witness tampering, bad faith conduct in sending the February 8th letter to Thomas, and false testimony under oath. Neither party addressed the impropriety of Cornell's direct communications with Simonton. The magistrate judge did not alert the parties to that issue. See In re Rimstat, 212 F.3d at 1045 (fair notice may come from the court or the opposing litigant). The parties' post-hearing briefs only addressed whether Cherry should be sanctioned for improper interference with the attorney-client relationship, not Cornell. Neither party discussed authority for sanctioning Cornell for interfering with Simonton's relationship with Thomas. Fair notice requires informing "the person that he or she is in jeopardy of being sanctioned by the court." Id. at 1045. In contrast, Cornell's attempt to improperly influence Simonton's testimony was squarely at issue. Fidelity's motion expressly sought sanctions for witness tampering. However, Cornell was not provided fair notice that the magistrate judge was considering whether he improperly interfered with the Thomas-Simonton relationship. Without fair notice, the court cannot sanction Cornell for improper interference with the attorney-client relationship. See Larsen, 130 F.3d at 1286-87; In re Rimsat, 212 F.3d at 1045. Cornell's objection on due process grounds must be sustained.

[3] In the alternative, Cornell argues he cannot be sanctioned for contacting an opposing party. A represented party may directly contact a represented opposing party; no rule prohibits such communication. See Restatement (Third) of Law Governing Lawyers, § 99; Lewis v. S.S. Baune, 534 F.2d 1115, 112 (5th Cir.1976) ("Courts have consistently held that parties have a right to settle or compromise their litigation without the knowledge or consent of their counsel"). Nevertheless, a party's harassment of or threats to an opposing party is considered bad faith conduct and may be subject to sanctions. See Carroll v. The Jaques Admiralty Law Firm, P.C., 110 F.3d 290 (5th Cir.1997) (attorney's use of threats and profanity at deposition warranted sanctions). Further, a party may not improperly influence witness testimony or encourage a witness to testify falsely. Quela v. Payco-General American Credits, Inc., No. 99 C 1904, 2000 WL 656681, at *6 (N.D.Ill. Mar.26, 2000).

The magistrate judge relied on Weibrecht v. Southern Illinois Transfer, Inc., 241 F.3d 875 (7th Cir.2001) to sanction Cornell for improper interference with the attorney-client relationship. Weibrecht is inapplicable. Weibrecht held an attorney was forbidden from contacting an opposing party absent consent from the party's counsel in accordance with Rule 4.2. 241 F.3d at 884. Weibrecht did not address whether a party could be sanctioned for improperly communicating with another party.

*8 Fidelity points to Ladien v. Astrachan, 128 F.3d 1051, 1057 (7th Cir.1997) and Loatman v. Summit Bank, 174 F.R.D. 592, 602 (D.N.J.1997). Ladien affirmed the district court's imposition of sanctions because the plaintiff directly communicated with defendants in violation of a court order. The plaintiff had previously harassed individual defendants. 128 F.3d at 1057. The court ordered the plaintiff to refrain from direct contact with the defendants. Thus, Ladien sanctioned the plaintiff for a violation of a court order, not improper interference with attorney-client relationship. Ladien is inapplicable. The magistrate judge previously denied Fidelity's motion to bar defendants from communicating directly with Fidelity's employees. The magistrate judge expressed her disapproval of anonymous letters, but recognized the parties "might properly wish to communicate with each other." Def. Obj., Ex. D, at p. 11.

Loatman is the only authority where sanctions were imposed because of a party's improper interference with the attorney-client relationship. In Loatman, the

court imposed sanctions for interference with the attorney-client relationship because defendants sought to purchase the allegiance of a class representative in a class action suit. 174 F.R.D. at 602. *Loatman*'s primary concern was defendants' bad faith conduct in enticing the plaintiff to abandon her responsibilities as the class representative. *Id.* at 602-604. The court sanctioned the defendants for "driving a wedge" between the plaintiff's relationship with class counsel. *Id.* The court had previously warned defendants not to directly contact the plaintiff. *Id.* at 601. The plaintiff had objected to direct contact from defendants on several occasions. Despite the court's admonition, the defendants continued the contact, offered incorrect legal advice to the plaintiff, and disrupted the class action suit by urging the plaintiff to abandon her duties as class representative. The court based its holding on the extraordinary circumstances necessary to protect absent class members. *Id.* at 605. The court also noted the parties were not of equal sophistication. *Id.*

The extraordinary circumstances in *Loatman* warranting sanctions for improper interference with the attorney-client relationship are not present here. Simonton and Cornell are opposing parties. Simonton is Fidelity's vice-president, and he is an individual defendant in Cornell's third-party complaint. No rule prohibited Cornell from directly contacting Simonton absent a court order. *See Hurley v. Greenwood Trust, Co.*, 215 B.R. 291 (8th Cir.1997) (rules of professional conduct do not apply to non-attorney communications with opposing party). At the evidentiary hearing, Fidelity failed to advance evidence Simonton objected to direct contact from Cornell. Simonton did not testify at the evidentiary hearing. In contrast, Cornell testified Simonton contacted him on several occasions to discuss the litigation. Tr. at 153-55. [FN1] Cornell's e-mail to Simonton is not threatening or abusive; it expressed an opinion about Thomas' representation. *See* Pl. Mot. for Sanctions, Ex. K. The e-mail merely states Thomas is not protecting Simonton's best interests. *Id.* Simonton, as Fidelity's vice-president, was a sophisticated individual fully capable of assessing his attorney's performance. He did not need protection from Cornell's opinions. No court order restricted Cornell from contacting Simonton. The magistrate judge noted Cornell ignored Lourie's advice to refrain from contacting Simonton. Cornell's disregard for his attorney's sound advice was not *per se* improper. The magistrate judge noted Cornell improperly forwarded the e-mail to Simonton despite the ethical prohibitions preventing Lourie from contacting Simonton. But it is undisputed Lourie did not personally contact Simonton or forward the e-mail himself. No ethical rule prevented Cornell from relaying information to Simonton based on conversations Cornell had with his attorney. Cornell has the right to waive the attorney-client privilege as the client. *Powers v. CTA*, 890 F.2d 1355, 1359 (7th Cir.1989); *Eagle Compressors, Inc. v. HEC Liquidating Conduct*, 206 F.R.D. 474, 477 (N.D.Ill.2002).

> FN1. The evidentiary hearing transcripts are included in Exhibit G of Cornell's objections; citation to the transcripts are referred to as "Tr. at ___."

*9 The magistrate judge determined the letters and e-mail were an improper attempt to influence Simonton's testimony. The record does not support a finding by clear and convincing evidence that Cornell authored the undated letter and January 15th memorandum. Standing alone, Cornell's e-mail does not clearly and convincingly establish that Cornell improperly influenced Simonton's testimony. Cornell expressed his opinion that Thomas was not protecting Simonton's best interests. *Cf. Quela v. Payco-General American Credits, Inc.*, 2000 WL 656681, at *4 (N.D.Ill. May 17, 2000) (sanctioning party for coaching witness testimony and encouraging witness to provide false testimony). Cornell's e-mail did not coach Simonton to misconstrue particular facts. Nor did Cornell suggest Simonton should testify falsely under oath. Instead, the e-mail encouraged Simonton to contact Lourie about retaining new legal representation. Pl. Mot. Sanctions, Ex. K.

The court's inherent power to sanction bad faith conduct "must be exercised with restraint and discretion." *Chambers*, 501 U.S. at 44. The Seventh Circuit has instructed that a court's inherent powers "must be invoked with the utmost caution." *Corley v. Rosewood Care Ctr., Inc.*, 142 F.3d 1041, 1059 (7th Cir.1998); *see also United States v. Fidelity and Deposit Co. of Maryland*, 986 F.2d 1110, 1120 (7th Cir.1993) ("the imposition of sanctions, including attorneys' fees, on the basis of the court's inherent power is to be undertaken with great circumspection"). Bad faith conduct generally involves oppressive or vexatious conduct, or attempts to perpetrate a fraud on the court. *See Chambers*, 501 U.S. at 51; *see also Sanctions: The Federal Law of Litigation Abuse*, § 27(B). Cornell's conduct does not constitute bad faith or vexatious conduct warranting sanctions.

In sum, Cornell was not provided fair notice that the

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

issue of whether he improperly interfered with an attorney-client relationship was the subject of Fidelity's motion and the evidentiary hearings. The record does not support a finding by clear and convincing evidence that Cornell authored the anonymous letters to Simonton. And Cornell's January 18th e-mail to Simonton does not warrant invoking the court's inherent authority to sanction bad faith conduct. Accordingly, Cornell's objections to the magistrate judge's findings and conclusions that he: (1) improperly interfered with Simonton's attorney-client relationship with Thomas; (2) improperly influenced Simonton's testimony; (3) authored anonymous letters and memorandum; and (4) lied under oath at his deposition, in affidavits, and at the evidentiary hearings are sustained. The magistrate judge's recommendation for dismissal of Cornell's third-party complaint against Simonton, and a jury instruction that Cornell lied under oath and engaged in witness tampering are not adopted. [FN2]

FN2. Cornell's argument that the magistrate judge's sanctions for improper interference with attorney-client relationship violates his First Amendment rights is moot.

IV. False Testimony and Threatening Anonymous Letters

A. Findings of Fact

*10 [4] Cornell objects to the magistrate judge's finding that he was the source of the February 8th anonymous letter to Thomas. At the hearing, Fidelity called as witnesses several attorneys from Lord, Bissell, and Brook (Fidelity's counsel), and Peter Wacks, Steven Simon, and Peter Reynolds (Fidelity's investigators), to establish the chain of custody of the cups and the February 8th letter. Fidelity presented the testimony of Jami Harman, Genetic Testing, Inc.'s ("GTI") scientific director, as its DNA expert. In response, Cornell called Howard Coleman of Genelex Laboratories, Inc. as its DNA expert. Cornell stipulated the DNA profile generated by Genelex from Cornell's blood was identical to the DNA profile generated by GTI from Cornell's drinking cup. [FN3] Cornell stipulated to Harman's expert qualifications. Tr. at 185. At the hearing, DNA profile from the February 8th envelope was referred to as "Q2." DNA profiles from Cornell's drinking cups were labeled "Q4" and "Q5." Harman testified DNA profiles from Q2, Q4, and Q5 matched. Cornell did not independently test the envelope or the drinking cup. Instead, Cornell attacked the reliability of GTI's results through Coleman's expert testimony.

FN3. The parties stipulated to the description of DNA and DNA testing procedures outlined in part II of United States v. Trala, 162 F.Supp.2d 336, 339-44 (D.Del.2001).

Expert testimony is admissible only if the proffering expert has genuine expertise or scientific knowledge, and that expertise assists the trier of fact to determine a fact in issue. See Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579, 592, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993). Cornell objects to the magistrate judge's finding that the concentration of DNA found on the envelope glue is sufficient to determine the DNA's source under a clear and convincing standard of proof. Specifically, Cornell asserts Harman improperly used a low relative fluorescence unit ("RFU") threshold, the level of genetic alleles included in a DNA profile, in creating the Q2 profile. Cornell argues the Federal Bureau of Investigation ("FBI") uses a 200 RFU level, while Harman adopted an unreliable threshold RFU level of 75 in creating Q2.

Cornell's objection to Harman's testimony went to its weight, not its admissibility. See e.g. United States v. Page, No. 98 C 3750, 2000 WL 139471, at *8 (N.D.Ill. Jan.28, 2000) (laboratory protocol for DNA evidence goes to weight, not admissibility). There is no single accepted standard for DNA concentration levels or RFU values in DNA testing. Harman and Coleman testified laboratories use different standards for determining the threshold RFU level in forming a DNA profile. Tr. at 277, 471, 481. Both experts testified laboratories generally adopt thresholds recommended by manufacturers of their machines, and thresholds based on validation studies. Id. GTI uses a standard RFU level of 75 based on validation studies to support inclusion of alleles at a low concentration. Id. at 265-67. Harman testified the manufacturer of GTI's machine recommends RFU levels at 75 or below. Indeed, Coleman's laboratory, Genelex, uses a RFU threshold between 25 to 40. In response, Cornell asserts Genelex uses a different machine than GTI. But Cornell fails to establishes differences in the two machines that would allow Coleman to reliably use a 25 RFU value, and prevent Harman from using a 75 RFU value. See id. at 496-97. Cornell did not challenge GTI's DNA profile of Q4 and Q5; the computer generated plots for those profiles is consistent with Q2's profile. Id. at 386. The reliability of Harman's DNA analysis is supported by

the magistrate judge's determination that Coleman's criticisms were not credible or probative. *See Quela v. Payco General American Credits, Inc.,* 2000 WL 1693966, at *1-2 (N.D.Ill. Nov.6, 2000) (court does not disturb the magistrate judge's credibility determination). Coleman did not prepare DNA profiles, perform case work, or take proficiency tests in DNA analysis. Tr. at 494. Coleman is Genelex's chief executive officer and is primarily involved in its business operations, not DNA analysis.

*11 Additional evidence clearly and convincingly establishes the reliability of Harman's DNA analysis. Harman's lowest RFU value used in forming Q2 was 41, above the threshold used by Cornell's expert. Tr. at 275. Harman excluded low concentrations of DNA where appropriate to form the Q2 profile. Coleman did not discover errors in GTI's validation data. *See id.* at 481. Harman identified two cases where her testimony was admitted based on RFU levels below 75. *Id.* at 375-76.

Cornell argues Fidelity failed to provide sufficient discovery to support the use of RFU levels at 75 and below. Cornell contends he needed every validation study for low RFU concentration levels. This argument lacks merit. Fidelity produced relevant validation data in accordance with the magistrate judge's order; Cornell sought a broad and unnecessary document production order that the magistrate judge properly rejected. *See* Tr. at 372, 414-15. Cornell complains about Fidelity's delay in producing materials. However, the magistrate judge eventually ensured all necessary materials were produced. Cornell was not prejudiced. He had sufficient time to review those materials. *See* Tr. at 372.

Cornell asserts he is not the source of DNA found on the envelope because he is allergic to the glued portions of envelopes. Cornell failed to present medical evidence demonstrating his purported allergy. The magistrate judge found Cornell's testimony incredible; this court will not disturb the magistrate judge's credibility determination. Finally, Cornell attempted to argue Fidelity's investigators were engaged in a scheme to frame him by planting DNA evidence on the envelope. Cornell presented no scientific evidence supporting his "planting" theory. Accordingly, the magistrate judge properly limited the scope of Cornell's deposition of Fidelity's investigators.

Harman's DNA analysis demonstrated the probability of a match between Q2, Q4, and Q5 was 1 in 346 million in the Caucasian population. Tr. at 315. The record establishes by clear and convincing evidence that Cornell was the author of the February 8th anonymous letter to Thomas.

B. Conclusions of Law

Cornell objects to the magistrate judge's conclusion that he can be sanctioned for the content of the February 8th letter. Cornell claims there is no authority that prevents him from sending anonymous letters to an opposing party. The magistrate judge's conclusions of law are reviewed *de novo.*

Parties may be sanctioned for bad faith conduction in litigation. *See Chambers,* 501 U.S. at 44; *Corley v. Rosewood Care Ctr.,* 142 F.3d 1041, 1058 (7th Cir.1998). A party's use of anonymous letters to opposing counsel to sabotage the litigation is an abuse of the judicial process. Anonymous, threatening letters prevent a speedy, open, and just resolution of the dispute on its merits. *See Barnhill v. Security Pacific Business Credit, Inc.,* 11 F.3d 1360, 1368 (7th Cir.1993) (sanctions warranted when a party expresses "such flagrant contempt for the court and its processes"); *Quela,* 2000 WL 656681, at *7 ("Given the extreme importance of accurate and truthful discovery, our court system must have zero tolerance for parties who seek to intentionally distort the discovery and trial process"). Threatening letters are harassing, and demonstrates the litigant's use of the judicial system in bad faith. *See Carroll v. The Jacques Admiralty Law Firm,* 110 F.3d 290, 294 (5th Cir.1997) (sanctioning party for offensive, intimidating conduct, and a lack of respect for the judicial process).

*12 [5] The February 8th anonymous letter was abusive and threatening. It implicitly threatened Thomas, Fidelity's counsel, with physical harm. The letter was designed to intimidate Thomas and disrupt his prosecution of Fidelity's claims. Cornell's February 8th letter constitutes bad faith conduct that may be sanctioned within the scope of the court's inherent authority. *See Carroll,* 110 F.3d at 294 (no First Amendment violation in sanctioning party for bad faith conduct in litigation). At his July 18, 2001 deposition, Cornell denied sending the February 8th letter to Thomas. Pl. Mot. for Sanctions, Ex. J, at p. 466-68. Clear and convincing evidence establishes that Cornell authored the February 8th letter. Thus, the record supports the magistrate judge's conclusion that Cornell provided false testimony under oath at his deposition. Finally, Cornell sent the February 8th letter in violation of the magistrate judge's clear directive that anonymous, threatening communications were intolerable. [FN4]

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

FN4. The court does reach the issue of Cornell's responsibility for other anonymous letters received by Fidelity's employees and its counsel. Those letters were not the subject of the evidentiary hearings; the magistrate judge did not make factual findings that Cornell authored those letters.

V. Appropriate Sanctions

"District courts possess wide latitude in fashioning appropriate sanctions [.]" *Johnson v. Kakvand*, 192 F.3d 656, 661 (7th Cir.1998); *Salgado v. General Motors Corp.*, 150 F.3d 735, 739 n. 5 (7th Cir.1998). The court's selection of a sanction "must be one that a reasonable jurist, appraised of all the circumstances, would have chosen as proportionate to the infraction." *Salgado*, 150 F.3d at 740. Default judgment may be awarded in extreme circumstances only. *In re Golant*, 239 F.3d 931, 937 (7th Cir.2001). Lying under oath is intolerable and may be punished by sanctions. "Turning a blind eye to false testimony erodes the public's confidence in the outcome of judicial decisions, calls into question the legitimacy of courts, and threatens the entire judicial system." *Quela*, 2000 WL 656681, at *7; *Rodriguez v. M & M /Mars*, No. 96 C 1231, 1997 WL 349989, at *2 (N.D.Ill. Jun.23, 1997) ("Parties who wish to use the judicial system to settle disputes have certain obligations and responsibilities. One of those responsibilities is to tell the truth").

[6] The record reflects clear and convincing evidence that Cornell threatened Thomas in an anonymous letter designed to disrupt his prosecution of Fidelity's claims. Cornell provided false testimony under oath at his deposition when he denied sending the February 8th letter. And Cornell sent the February 8th letter after the magistrate judge expressly warned the parties about the impropriety of anonymous letters, and referred the matter to the United States Attorney. In the February 8th letter, Cornell expressed his contempt for the magistrate judge's directive when he state: "You can hand this over to the federal authorities too!" Pl. Mot. for Sanctions, Ex. H. Misconduct that exhibits "flagrant contempt for the court and its processes" must be sanctioned. *Barnhill*, 11 F.3d at 1368. Default judgment is a serious and harsh sanction. *Id.* The court must consider whether less drastic sanctions would be effective. *Id.*

*13 After careful consideration of alternative sanctions, the court finds dismissal of Cornell's counterclaims against Fidelity is warranted. Cornell's February 8th letter was a direct attempt to influence the outcome of this action--to thwart Fidelity's prosecution of its claims by threatening its attorney. *See In re Golant*, 239 F.3d at 935-38 (default judgment appropriate where a party exhibits bad faith conduct); *Quela*, 2000 WL 656681, at *2 (sanction of default judgment is warranted where defendant acted in bad faith and provided false testimony). Cornell cannot circumvent the judicial process and employ improper means of defense against Fidelity's claims. *Brady v. United States*, 877 F.Supp. 444, 453 (C.D.Ill.1994) ("Litigants must know that the courts are not open to persons who would seek justice by fraudulent means"). The record clearly and convincingly supports the magistrate judge's conclusion that Cornell's conduct was willful and in bad faith. Further, the record establishes clearly and convincingly that Cornell lied under oath at his deposition. A monetary fine is insufficient to remedy the disruption and delay caused by litigation of collateral misconduct issues. *See Quela*, 2002 WL 799750, at *2 ("Entering default judgment will send a strong message to other litigants, who scheme to abuse the discovery process and lie to the Court, that this behavior will not be tolerated and will be severely punished"). Dismissal with prejudice of Cornell's counterclaims against Fidelity is an appropriate sanction. In addition, Fidelity is awarded reasonable attorneys' fees and expenses incurred in connection with its motion for sanctions. *See United States v. Fidelity Deposit*, 986 F.2d 1110, 1120 (7th Cir.1993) (court's inherent authority to sanction includes shifting attorneys' fees and expenses); *Quad, Inc. v. ALN Associates*, 781 F.Supp. 561 (N.D.Ill.1992) (same).

CONCLUSION

The court has conducted a *de novo* review of the parties' submissions, exhibits, the evidentiary hearing transcripts, and the magistrate judge's report and recommendation. After careful consideration of the record, the court adopts the magistrate judge's report and recommendation in part. Fidelity's motion to disqualify Myron Cherry is denied. Cornell's objections to the magistrate judge's findings that he: (1) improperly interfered with Simonton's attorney-client relationship with Thomas; (2) improperly influenced Simonton's testimony; (3) authored anonymous letters and memorandum to Simonton; and (4) lied under oath at his deposition, in affidavits, and at the evidentiary hearings when he denied sending Simonton anonymous letters are sustained. Cornell's objections to the magistrate judge's finding

Not Reported in F.Supp.2d
**(Cite as: 2002 WL 1433717 (N.D.Ill.))**

Page 11

that he sent Thomas the February 8th anonymous letter and lied under oath at his deposition are overruled. Pursuant to its inherent authority to sanction bad faith conduct in litigation, Cornell's counterclaims against Fidelity are dismissed with prejudice. Fidelity is awarded reasonable attorneys' fees and costs in connection with its motion for sanctions.

2002 WL 1433717 (N.D.Ill.)

END OF DOCUMENT

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works