Not Reported in F.Supp.2d                                                                                                      Page 1
**(Cite as: 2002 WL 663859 (D.Conn.))**

Only the Westlaw citation is currently available.

United States District Court, D. Connecticut.

John E. COX, Plaintiff,
v.
Edward L. BLAND and New Haven Housing Authority
Defendants and third-party
plaintiffs,
v.
BEACON/CORCORAN, Jennison, LP, Stamford Wrecking
and Andrew Martinez, Secretary
for the Department of Housing and Urban Development,
Third-party defendants.

No. CIV.A. 3:00CV311(CFD.

March 26, 2002.

RULING ON PENDING MOTIONS

DRONEY, District J.

I. *Introduction*

**\*1** This action was originally filed in the Connecticut Superior Court by John Cox ("Cox"), the Executive Director of the New Haven Commission on Equal Opportunities ( the "CEO"). Cox seeks temporary injunctive relief against defendant New Haven Housing Authority ("NHHA") and its Director, Edward Bland, through the enforcement of an order directing the defendants to cease all payments on a construction project known as "Elm Haven Hope VI" ("the project"). [FN1] Cox alleges that the wages of certain workers do not comply with a municipal ordinance governing equal employment opportunities. He also seeks attorney's fees and costs.

> FN1. The Court will refer to both defendants as the "NHHA."

On November 29, 1999, the defendants filed a third-party complaint against the project's developer, Beacon/Corcoran Jennison Limited Partners ("Beacon"); its contractor, Stamford Wrecking; the United States Department of Housing and Urban Development ("HUD"), the government agency responsible for funding and administering expenditures for the project; and Andrew Cuomo ("Cuomo"), the former Secretary of HUD. [FN2] The precise legal basis for the third-party complaint is not clear, though the NHHA alleges that HUD acted negligently in setting the rates of compensation for the workers at issue and that it is guilty of a "breach." The NHHA seeks damages against the third-party defendants in the event of a finding of liability in the direct action by Cox. Based on these allegations, it appears that the third-party complaint essentially seeks indemnification.

> FN2. Andrew Martinez "Martinez", the current Secretary of HUD, is automatically substituted as the third-party defendant in this action pursuant to Fed.R.Civ.P. 25(d)(1). The Clerk is directed to make this change to the docket. The Court will refer to both of these third-party defendants as "HUD."

On February 16, 2000, HUD removed the case to this Court pursuant to 28 U.S.C. § 1441(a), 1442(a)(1), and § 1446(a), and claims that this Court has subject matter jurisdiction under 28 U.S.C. § 1441(a) and § 1442(a)(1).

Several motions currently are pending in this case. As an initial matter, HUD's Notice to Revive its Amended Motion to Dismiss to the Active Docket [Doc. # 31] is granted; plaintiff's Motion to Revive His Motion for Remand and Motion for Severance and Transfer [Doc. # 32] is granted. The plaintiff's Motion to Amend [Doc. # 37] is granted, absent objection. [FN3] Further, the plaintiff's Motion for Temporary Injunction [Doc. # 40] is denied, without prejudice to renewing, based on the representations of plaintiff's counsel at the hearing held by this Court. The remaining motions are discussed below.

> FN3. The amended complaint substitutes Robert Solomon, the current director of the NHHA, for Edward Bland, its former director. It also adds additional factual allegations and a request for permanent injunctive relief.

II. *Background*

The CEO is charged with conducting investigations and bringing actions to enforce equal opportunities in the City of New Haven. Am. Compl. ¶ 4. As explained above, Cox's amended complaint against the NHHA challenges the rate paid to workers removing asbestos at Elm Haven, a federally-funded housing development operated by the NHHA. Am. Compl. ¶ 11.

The Elm Haven project involves the demolition of existing buildings and the construction of new housing, activities which are funded by a "Hope VI" grant awarded to the NHHA by HUD. Cox alleges that "workers performing asbestos abatement were and continue to be grossly underpaid in violation of Chapter 12 1/2 " of the New Haven City Ordinances, entitled "Equal Opportunities." Am.

Compl. ¶ 16. Section 12 1/2 -31 of the New Haven Ordinances requires that the minimum wage for certain city-related construction contracts correspond to the prevailing wage rates set forth in the Davis-Bacon Act, 46 Stat. 1494, as amended, 40 U.S.C. §§ 276a to 276a-5. See Am. Compl. ¶ 8. Such contracts are within the CEO's enforcement authority when their value is more than $100,000, see New Haven, Conn. Ordinances, Equal Opportunities, § 12 1/2 - 22(a), and the City's contract with developer Beacon meets these criteria. Am. Compl. ¶ 11.

**\*2** Cox maintains that the NHHA did not comply with New Haven ordinances prohibiting wage discrimination and that it lacked the necessary trade classification for the asbestos and hazardous waste workers. Am. Compl. ¶¶ 15- 16. As a result, in a January 14, 1999 letter to the NHHA, Cox ordered it to stop all payments to the project's developer and contractors for any work relating to asbestos removal or hazardous waste handling. Am. Compl. ¶ 20. This order, which was authorized by the CEO's Board of Commissioners, was issued pursuant to § 12 1/2 -23(m) of the New Haven City Ordinances, which permits the CEO to withhold payments under a public contract if it finds that the contractor refused to comply with the City's requirements until it is determined that the contractor is in compliance. Am. Compl. ¶ 19. This order was stayed by agreement of the parties for a period of several weeks pending mediation of the matter. Am. Compl. ¶¶ 21-24. At their February 3, 1999 meeting, the CEO Commissioners voted to deny various requests to extend the stay. Am. Compl. ¶¶ 26-27. On February 11, 1999, the CEO issued a second written order directing the NHHA to stop all payments to the developer and contractor for work completed on the project, but the NHHA refused to comply. Am. Compl. ¶ 29. On April 15, 1999, Cox filed his complaint in Connecticut Superior Court pursuant to under § 12 1/2 -7(a) of the New Haven City Ordinances, which permits the commission to enforce its orders in state court and request appropriate relief, such as a temporary injunction.

As explained above, the NHHA's third-party complaint alleges that if the workers were underpaid, it was attributable to "a breach or negligence" of the third-party defendants. HUD explains that pursuant to the United States Housing Act, 42 U.S.C. § 1437j(a), [FN4] the challenged wage rates for the workers were subject to wage requirements found in the Davis-Bacon Act, and that its wage classifications for the project were approved by the Department of Labor [FN5].

> FN4. 42 U.S.C. § 1437j(a) provides:
> Any contract for loans, contributions, sale, or lease pursuant to this chapter shall contain a provision requiring that not less than the wages prevailing in the locality, as determined or adopted (subsequent to a determination under applicable State or local law) by the Secretary, shall be paid to all architects, technical engineers, draftsmen, and technicians employed in the development, and all maintenance laborers and mechanics employed in the operation, of the low-income housing project involved; and shall also contain a provision that not less than the wages prevailing in the locality, as predetermined by the Secretary of Labor pursuant to the DavisBacon Act [40 U.S.C.A. § 276a et seq.], shall be paid to all laborers and mechanics employed in the development of the project involved (including a project with nine or more units assisted under section 1437f of this title, where the public housing agency or the Secretary and the builder or sponsor enter into an agreement for such use before construction or rehabilitation is commenced), and the Secretary shall require certification as to compliance with the provisions of this section prior to making any payment under such contract.

> FN5. "Since 1931, the Davis-Bacon Act, 46 Stat. 1494, as amended, 40 U.S.C. §§ 276a to 276a-5, has required that the wages paid on federal public works projects equal wages paid in the project's locale on similar, private construction jobs." California Division of Labor Standards Enforcement v. Dillingham Construction, N.A., Inc, 519 U.S. 316, 319 (1997);

III. *Motion to Remand* [Doc. # 5]

In his Motion to Remand [Doc. # 5], Cox argues that removal was improper because his temporary injunction action against the NHHA was the equivalent of a pending motion, he was not notified of the removal in a timely manner, and because the Court lacks subject matter jurisdiction over the temporary injunction request [FN6]. HUD maintains that the plaintiff's motion to remand should be denied as untimely under 28 U.S.C. § 1447, which provides that motions to remand on the basis of defects other than lack of subject matter jurisdiction must be filed within thirty days of the filing of a notice of removal under § 1446(a) and because as a federal agency it is authorized to remove actions under 28 U.S.C. § 1442(a)(1). "Generally speaking, removal statutes are to be strictly construed against removal and all doubts should be resolved in favor of remand... Consequently, the burden of proving federal removal jurisdiction is on the party seeking to preserve removal, not the party moving for remand." *Varela v. Flintlock Constr., Inc, 148 F.Supp.2d 297, 298-99*

(S.D.N.Y.2001) (internal quotations and citations omitted).

> FN6. In his motion to remand, Cox also states that the third-party plaintiff "has not stated any claim concerning the Department of Housing and Urban Development upon which relief may be granted." The Court will address this argument when it considers the amended motion to dismiss filed by HUD.

A. *Timeliness of Remand Motion*

**\*3** The notice of removal in this case was filed on February 16, 2000. The pending motion to remand was originally filed on March 31, 2000, more than thirty days later. HUD does not dispute, however, that the plaintiff did not receive timely notice of the removal. On February 25, 2000, HUD's counsel faxed the notice of removal to the plaintiff's attorney. Still, the motion to remand was filed more than thirty days after this date, and consequently Cox's procedural defect arguments are time-barred under § 1447. [FN7] *See Pierpoint v. Barnes,* 94 F.3d 813, 818 (2d Cir.1996) ("[I]t was the intent of Congress to create a strict time limitation on all challenges to removal based on any impropriety, whether procedural or substantive, in the removal procedure(excepting those based on the district court's lack of subject matter jurisdiction).").

> FN7. The Court does not express an opinion on whether the date of notice rather than the date of filing may be used to calculate the thirty-day time period in which the plaintiff can file a motion to remand. HUD's response to the motion to remand, however, focuses on the February 25, 2000, date and the Court will do so as well.

There is an exception to the thirty-day requirement of § 1447(c) for cases where the court lacks subject matter jurisdiction. Although Cox does not raise this issue in the context of 28 U.S.C. § 1447, but instead states only that the Court lacks subject matter jurisdiction over the temporary injunction request, the Court will address subject matter jurisdiction issue because it may raise it *sua sponte* to determine whether the case should be remanded on the basis of the absence of subject matter jurisdiction [FN8]. *Anderson v. Desai,* No. 01-CV-1087, 2001 WL 1717303, at \*1 (W.D.N.Y. Dec. 12, 2001) ("[T]his court is obliged to ascertain, *sua sponte,* if it has the subject matter jurisdiction in this case, and, therefore, whether it was appropriately removed.")

> FN8. The Court will not address whether it can or should remand the case *sua sponte* based on procedural defects, as the issue was not raised *sua sponte* before the expiration of the 30-day time limit. *See Cassara v. Ralston,* 832 F.Supp. 752, 753 (S.D.N.Y.1993).

B. *Subject Matter Jurisdiction*

HUD removed the case to this Court pursuant to 28 U.S.C. § 1441(a) and 1442(a)(1), and § 1446(a), claiming subject matter jurisdiction under § 1441(a) and § 1442(a)(1). Section 1441(a) provides a defendant may remove an action if the district court to which it is removed has original jurisdiction over it. Also, under 28 U.S.C. § 1442(a)(1), a case may be removed if any agency or officer of the United States is sued for an official act. Third-party defendant status does not preclude removal under § 1442(a)(1). *Moreland v. Van Buren GMC,* 93 F.Supp.2d 346, 350 (E.D.N.Y.1999) (citing cases). However, "this section does not furnish an independent ground for federal jurisdiction absent some federal question implicated either in the claim or by way of a defense." *Mizuna, Ltd. v. Crossland Fed. Sav. Bank,* 90 F.3d 650, 655 (2d Cir.1996) (citing *Mesa v. California,* 489 U.S. 121, 136 (1989)). "[T]he Third-Party Defendants must sufficiently allege that (1) they are federal agencies [or officers of such an agency], (2) there exists a causal connection between the alleged conduct and the asserted official authority and (3) they have a colorable federal defense to the claim." *Moreland,* 93 F.Supp.2d at 352 (internal quotations omitted) (citing *Mesa,* 489 U.S. 124-137).

HUD is a federal agency and Martinez is an officer of that agency. Given the cryptic nature of the third-party complaint, however, a causal connection between the alleged conduct and HUD's asserted official authority is less apparent. As explained above, the third-party plaintiffs allege that any improper wage classification was attributable to HUD's negligence or its "breach." Third Party Compl. ¶ 11. It also alleges that HUD approves all wage classifications for the project "both in fact and as required by Federal Regulation." Third Party Compl. ¶ 9. In its Amended Motion to Dismiss, which will be discussed *infra,* HUD further elaborates that the demolition and construction activities on the project site are subject to wage requirements found in the Davis-Bacon Act, and that all wage classifications for the project were approved by the Department of Labor. [FN9] Based on the allegations in the third-party complaint, it appears that the conduct challenged by the third-party plaintiffs-HUD's "negligence" and "breach"-are official actions taken by the agency relating to its classification of the workers for wage purposes. Thus, the alleged conduct occurred as part of HUD's assertion of its official authority, and the second prong of the *Mesa* test

Not Reported in F.Supp.2d                                                                                                    Page 4
**(Cite as: 2002 WL 663859 (D.Conn.))**

is satisfied.

>   FN9. HUD does not address whether it is a proper third-party defendant in its papers.

**\*4** HUD also appears to have available colorable federal defenses. To be colorable, a defense need not be ultimately successful, but must only be plausible. 16 James W. Moore et al., Moore's Federal Practice § 107.15[1][b] [iv][A] (3d ed 2001). In its first motion to dismiss, HUD raised the defense of federal sovereign immunity, and while it appears to no longer pursue that motion, in its amended motion to dismiss it also asserts the same immunity defense with respect to any indemnification claim by the NHHA. While the applicability of sovereign immunity to the statutes at issue-the Housing Act and the Davis-Bacon Act-may not be certain, it is at least plausible. The *Mesa* test therefore is met, and Court has apparent subject matter jurisdiction over this action. Consequently, the plaintiff's motion to remand [Doc. # 5] is denied, and the Court will not remand the entire case to state court.

IV. *Motion for Severance and Transfer* [Doc. # 16]

Also pending is Cox's Motion for Severance and Transfer [Doc. # 16]. Cox argues that the original complaint-with his request for a temporary injunction-should be severed and "transferred" to the Connecticut Superior Court. He bases his argument on Rules 14 and 21 of the Federal Rules of Civil Procedure.

Rule 14(a) of the Federal Rules of Civil Procedure provides that "[a]ny party may move to strike the third-party claim, or for its severance or separate trial." In considering whether the third-party claim should be severed, "the court typically is concerned with the effect the additional parties and claims will have on the adjudication of the main action--in particular, whether continued joinder will serve to complicate the litigation unduly or will prejudice the other parties in any substantial way." 6 C. Wright, A. Miller & M. Kane, Federal Practice and Procedure § 1460 (2d ed.1990). Similarly, Rule 21 of the Federal Rules of Evidence provides that "[a]ny claim against a party may be severed and proceeded with separately." Fed.R.Civ.P. 21. The decision whether to sever a party or claim is within the discretion of the district court *German v. Federal Home Loan Mortgage Corp.,* 896 F.Supp. 1385, 1400 (S.D.N.Y.1995). "Rule 21 permits a court to add or drop parties to an action when doing so would serve the ends of justice and further the prompt and efficient disposition of the litigation." *Id.* "[T]he Court will consider the following factors in making such a decision: (1) whether the claims arise out of the same transaction or occurrence; (2) whether the claims present some common questions of law or fact; (3) whether settlement of the claims or judicial economy would be facilitated; (4) whether prejudice would be avoided if severance were granted; and (5) whether different witnesses and documentary proof are required for the separate claim." *Morris v. Northrup Grumman Corp.,* 37 F.Supp.2d 556, 580 (E.D.N.Y.1999).

The Court will not sever Cox's complaint based on Rule 14(a) or Rule 21. Cox argues that the "main action" here-his underlying request for injunctive relief against the NHHA-is simply an enforcement action in which he seeks NHHA's compliance with the CEO's orders to cease payments for work related to asbestos removal and hazardous waste handling. He contends that the dispute among NHHA, Beacon, Stamford Wrecking, and HUD over responsibility for the underpayment of the workers is unrelated to the original complaint and will only serve to complicate the litigation and prejudice Cox and the CEO. In the hearing held before this Court, he further explained that any determination that the wages of the workers were too low would serve as res judicata in the action by the NHHA against HUD and the other third-party defendants.

**\*5** "The crucial characteristic of a Rule 14 claim is that defendant is attempting to transfer to the third-party defendant the liability asserted against him by the original plaintiff. *Farmers Prod. Credit Ass'n of Oneota v. Whiteman,* 100 F.R.D. 310, 312 (N.D.N.Y.1983) (quoting Federal Practice and Procedure § 1466 at 257 (1971 ed .)). Secondary liability often is shown "when a defendant alleges that the third party defendant's liability is predicated on a duty of indemnification...." *Design/Craft Fabric Corp. v. Lit-Pac, Inc,* No. 89 C 2037, 1989 WL 106681, at \*1 (N.D.Ill. Sept. 12, 1989). Here, the third-party complaint contains the "crucial characteristic" of a claim under Rule 14: the NHHA seeks to transfer liability for the underpayment of the wages to HUD, Beacon, and Stamford Wrecking. Further, the court that decides whether the order ceasing payments should be enforced and an injunction issued also must decide whether the workers' wages were in fact too low. This determination also will involve an examination of the Davis-Bacon Act wage requirements and will implicate many of the same issues raised by the third-party complaint. Thus, the litigation will not be unduly complicated if the third-party claims are adjudicated together with the amended complaint, judicial efficiency will be advanced by hearing both portions of the case at the same time, and the Court concludes that Cox and the CEO will not be prejudiced if the case proceeds in this manner. [FN10]

>   FN10. Cox also contends that the third-party

complaint merely seeks to re-argue the merits of the matter before the CEO in January and February 1999, an effort which should be precluded because the NHHA could have appealed the CEO's order pursuant to § 12 1/2 -7(d) of the New Haven City Ordinances, which provides that a party aggrieved by a CEO order may appeal to Connecticut Superior Court within thirty days of the decision. While the NHHA may have not appealed the CEO's order to cease payments, its failure to do so does not prevent it from defending its rights in an enforcement action by the CEO under § 12 1/2 -7(a)

As to Rule 21, severing Cox's claim for temporary injunctive relief will not serve the ends of justice or further the efficient outcome of the litigation. The CEO concedes that both the original complaint and the third-party complaint arise out of the same transaction or occurrence: "the alleged underpayment of wages to workers who handle and remove asbestos and other hazardous materials ." Memo. Supp. Mot. Severance & Transfer, at 5. The amended complaint and the third-party complaint also present several common questions of law and fact. Although Cox argues that his request for injunctive relief would require only the application of New Haven City Ordinances, § 12 1/2 -31 of those Ordinances requires parties contracting with the City to comply with the Davis-Bacon Act and thus will implicate many of the same issues raised in the third-party complaint. Therefore, determining whether the NHHA complied with the City Ordinances and whether the CEO order should be enforced will also require a determination of whether federal law was followed. These federal issues are at the heart of the third-party complaint and HUD's Amended Motion to Dismiss. This is particularly true given that the standard for temporary injunction under Connecticut law and for a preliminary injunction under federal law both involve an examination of whether the plaintiff will prevail on the merits. *See Constitution State Challenge v. Nyemcheck,* No. CIV A. 300CV650CFD, 2001 WL 640417, at *3 (D. Conn. June 1, 2001) ("In order to obtain a preliminary injunction, a party must demonstrate: (1) that it is subject to irreparable harm; and (2) either (a) that it will likely succeed on the merits or (b) that there are sufficiently serious questions going to the merits of the case to make them a fair ground for litigation, and that a balancing of hardships tips 'decidedly' in favor of the moving party ."); *Waterbury Teachers Association v. Freedom of Information Commission,* 645 A.2d 978, 980 (1994) (explaining that the four-part test for the issuance of a temporary injunction under Connecticut law involves the following considerations: "(1) the plaintiff ha[s] no adequate legal remedy; (2) the plaintiff would suffer irreparable injury absent [the injunction]; (3) the plaintiff [is] likely to prevail ...; and (4) the balance of the equities favor[s the issuance of the injunction]."). Further, given the overlapping issues, judicial economy is facilitated by permitting both complaints to be adjudicated in the same action.

**\*6** While the plaintiff argues that he would be prejudiced if the claims were not severed, his argument is not tenable. Although Cox states that his only interest is in a ruling on the temporary injunction request, there is no reason why that request could not be re-filed in federal court as a motion for preliminary injunction, with a final determination on the wage classifications held to a later date. In addition, HUD, Beacon, and Stamford Wrecking could be prejudiced if the issue of whether the workers were improperly classified and thus underpaid is decided without their participation and becomes collateral estoppel for the purposes of the NHHA's action. [FN11] Finally, it appears that many of the same witnesses and documentary proof would be utilized in adjudicating both complaints. Those witnesses might include NHHA officials who communicated with federal authorities regarding wage classifications, and those documents could include records kept by the NHHA, Beacon, and Stamford Wrecking regarding the nature of the work being completed by the employees at issue and wage records for these workers.

> FN11. Stamford Wrecking, the only third-party defendant to file an answer to the third-party complaint, does not clearly contest Cox's assertion that the wages were too low. It has filed various counterclaims against the NHHA and cross claims against the other third-party defendants. Neither HUD nor Beacon have filed answers, and it is not certain whether they contend that the wage classifications were improper.

Since the Court concludes that severance of the third-party plaintiffs' claims is not appropriate, it will not address whether, if such severance were effectuated, the Court then could "transfer"-or more appropriately, remand-the CEO's amended complaint to state court pursuant to Rules 14 and 21. [FN12]

> FN12. The Court also notes that Cox has not raised 28 U.S.C. § 1441(c) as a basis for remand in this case.

V. *Motion to Amend* [Doc. # 36]

Defendant and third party plaintiff NHHA moves to amend the third party complaint [Doc. # 36] pursuant to Rule 15(a) of the Federal Rules of Civil Procedure, which provides that

Not Reported in F.Supp.2d                                                                                              Page 6
**(Cite as: 2002 WL 663859 (D.Conn.))**

a party may amend its pleading after a responsive pleading has been served only by leave of the court or by written consent of the adverse party. Fed.R.Civ.P. 15(a). The NHHA filed its motion to amend the third-party complaint on May 24, 2001. Since the parties in this case have not filed a Report of the Parties' Planning Meeting pursuant to Fed.R.Civ.P. 26 and District of Connecticut Local Rules 11 and 38, the applicable deadline for filing amendments are those set when the case was removed under the Standing Order of this District, and thus have long passed. Accordingly, the NHHA also had to show good cause to amend the scheduling order under Fed.R.Civ.P. 16(b) by filing its amended third-party complaint, an issue which it has not argued to the court. Parker v. Columbia Pictures Indus, 204 F.3d 326, 339-40 (2d Cir.2000). However, given the uncertainty regarding the status of this action because of the ongoing settlement discussions, and in particular because the Court agreed to refrain from acting on the pending motions while those settlement discussions were ongoing, the scope of the scheduling order in effect at the time this motion was filed may not have been entirely clear. Accordingly, the motion to amend is denied, but without prejudice to the NHHA refiling the motion and setting forth the reasons why good cause for such an amendment exists.

VI. *Motion to Dismiss* [Doc. # 19]

**\*7** Given that the Court may permit the NHHA to amend the third-party complaint in this case and that this amendment, if allowed, may affect the arguments asserted in HUD's Amended Motion to Dismiss [Doc. # 19], the court will deny the motion, without prejudice to refiling. In doing so, however, it expresses no opinion on the merits of the NHHA's motion to amend the third-party complaint.

VII. *Conclusion*

HUD's Notice to Revive its Amended Motion to Dismiss to the Active Docket [Doc. # 31] is granted.

Plaintiff's Motion to Revive His Motion for Remand and Motion for Severance and Transfer [Doc. # 32] is granted.

Plaintiff's Motion to Amend [Doc. # 37] is granted, absent objection.

Plaintiff's Motion for Temporary Injunction [Doc. # 40] is denied, without prejudice.

Plaintiff's Motion to Remand [Doc. # 5] is denied.

Plaintiff's Motion for Severance and Transfer [Doc. # 16] is denied.

The NHHA's Motion to Amend Third Party Complaint [Doc. # 36] is denied, without prejudice.

HUD's Amended Motion to Dismiss [Doc. # 19] is denied, without prejudice.

The parties are further directed to submit a Report of the Parties' Planning within twenty days of the date of this ruling, incorporating the deadlines that already have been set by the Court.

2002 WL 663859 (D.Conn.)

END OF DOCUMENT

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works