Westlaw.

Not Reported in F.Supp.  
1998 WL 422900 (D.Conn.)  
**(Cite as: 1998 WL 422900 (D.Conn.))**

Page 1

**Motions, Pleadings and Filings**

Only the Westlaw citation is currently available.

United States District Court, D. Connecticut.
Lynn GOLD, Plaintiff
v.
DALKON SHIELD CLAIMANTS TRUST, Defendant
**No. 5:82-CV-383 (EBB).**

July 16, 1998.

*RULING ON PLAINTIFF'S MOTION TO RECONSIDER AND RE-ARGUE*

BURNS, Senior J.

*INTRODUCTION*

*1 On June 15, 1998, this Court granted the Dalkon Shield Claimants Trust's ("Trust" or "Defendant") Motion for Summary Judgment, holding that the case commenced by Lynn Gold ("Ms. Gold" or "Plaintiff") was deficient as a matter of law due to her inability to meet her burden of proof as to causation. This deficiency warranted the grant of summary judgment in that Plaintiff had failed to retain an expert to testify to the causal link between any defects in the Dalkon Shield and her injuries, despite this Court granting numerous extensions of time for Ms. Gold to do so.

On June 25, 1998, Ms. Gold filed the present Motion for Reconsideration and To Re-Argue that decision, submitting two reports of alleged experts, which experts Plaintiff contends meet her burden of proof on causation.

*STATEMENT OF FACTS*

The pertinent facts of this case are set forth in the Court's Rulings on Motion to Have the Court Appoint Expert Witnesses and the Motion for Summary Judgment. The Court assumes familiarity with those decisions, and sets forth herein only those additional facts necessary to an understanding of the issues raised in, and the decision rendered on, the present Motion.

On February 28, 1998, after granting Plaintiff numerous extensions of time to comply with court-ordered deadlines, an Amended Scheduling Order was entered in this case. In pertinent part, Plaintiff was ordered to identify any expert witnesses she intended to call at trial and mail to the Defendant a copy of said experts' opinions, in compliance with Federal Rule of Civil Procedure 26(a)(2)(B), on or before March 27, 1998. Discovery was to close on June 1, 1998, dispositive motions were to be filed by June 15, 1998, with replies thereto by June 29, 1998. A tentative trial date of July 6, 1998 was set forth.

Plaintiff did not comply with the order on expert witnesses, and filed an untimely motion for extension of time to do so on April 3, 1998. Keeping Plaintiff's status of an alleged *pro se* party to the forefront, the Court granted the motion.

On April 6, 1998 Plaintiff filed a list of fifteen names with addresses (in some instances, incomplete addresses) from all over the country. She did not file any documents whatsoever in compliance with Rule 26(a)(2)(B). Rather, the Court, and the Defendant, were left to speculate as to who these individuals were and what relevant testimony they would possibly offer at the trial of this case.

With their opposition to the present Motion, Defendant has filed a copy of a letter it sent to Plaintiff on April 9, 1998. The letter clearly spells out to Ms. Gold what her responsibilities were under Rule 26(a)(2)(B) and that her list of names was legally unacceptable under that Rule. Accordingly, Defendant requested the lacking experts' reports. Defendant further advised Ms. Gold that, if it had not received the required reports by April 15, 1998, it intended to move for summary judgment, raising her lack of an expert witness as a basis for

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp. Page 2
1998 WL 422900 (D.Conn.)
**(Cite as: 1998 WL 422900 (D.Conn.))**

dismissal of her case. Plaintiff replied that she had consulted an attorney, and stated her position that she need not provide expert opinions until she had actually retained an expert. She did not address the fact that her deadline for retaining an expert had already passed.

**\*2** On April 24, 1998, having received no compliance from Plaintiff, Defendant moved for summary judgment.

On May 11, 1998, while the Motion for Summary Judgment was pending, Plaintiff moved the Court to appoint expert witnesses for her, pursuant to Federal Rule of Evidence 706. After due consideration, the request was denied on June 3, 1998. On June 8, 1998, more than two months after her original Rule 26(a)(2)(B) deadline, Plaintiff filed a Motion for Extension of Time in which to obtain an expert witness. On June 15, 1998, the Court determined that this Motion, unlike her five previous Motions for Extension of Time, should be denied. The Ruling granting Defendant's Motion for Summary Judgment was also issued on that date.

*LEGAL ANALYSIS*
I. *The Standard of Review*

Plaintiff has filed her Motion for Reconsideration and to Re-argue pursuant to Local Rule of Civil Procedure 9(e). The Second Circuit Court of Appeals has held that motions for reconsideration under this Local Rule are, as a practical matter, the same thing as motions for amendment of judgment under Federal Rule of Civil Procedure 59(e)--each seeks to reopen a district court's decision on the theory that the court made mistaken findings in the first instance. "As such ... we believe that a motion under local rule 9(e) must be treated the same as a motion under Rule 59." *City of Hartford v. Chase,* 942 F.2d 130, 133 (2d Cir.1991).

A motion for reconsideration made pursuant to Rule 59(e) must adhere to stringent standards. *Oxford House, Inc. v. City of Albany,* 155 F.R.D. 409, 410 (N.D.N.Y.1994). A plaintiff filing such a motion faces a heavy burden in pursuing such a motion. *Wilson v. Consolidated Rail Corp.,* 815 F.Supp. 585, 586 (N.D.N.Y.1993). The court's rulings under the rule are "committed to the sound discretion of the district judge and will not be overturned on appeal absent an abuse of discretion." *McCarthy v. Manson,* 714 F.2d 234, 237 (2d Cir.1983).

Rule 59(e) recognizes only three possible grounds for any motion for reconsideration: (1) an intervening change in the law; (2) the availability of new evidence not previously available; and (3) the need to correct a clear error of law or prevent manifest injustice. *Doe v. New York City Dep't. of Social Services,* 709 F.2d 782, 789 (2d Cir.), *cert. denied sub nom, Catholic Home Bureau v. Doe,* 464 U.S. 864, 104 S.Ct. 195, 78 L.Ed.2d 171 (1983). Prong one clearly has no applicability to the present Motion. Hence, the Court will examine only prongs two and three, seriatim.

II. *The Standard As Applied*

As to the second prong, the Court holds that the two letters from Plaintiff's alleged experts are too little, too late. As noted above, Plaintiff virtually ignored the Court Scheduling Order as to the notification of Defendant as to her expert witnesses. It was not until days after the due date that Plaintiff even moved for an extension of time and, when granted, Plaintiff filed a mere list of names and some addresses, completely avoiding the dictates of Rule 26(a)(2)(B). Plaintiff filed another belated motion for extension of time to obtain expert witnesses on June 8, 1998, two months after the deadline had passed. The affidavit from her lawyer-advisor admits that he never contacted Dr. Weinstein until April 30, 1998, weeks after the deadline had passed and after the motion for summary judgment was already pending.

**\*3** The proffer of the two doctors' testimony is still not in compliance with Rule 26(a)(2)(B). As to Dr. Weinstein, his current proffer is in direct contradistinction to his contemporaneous notes of twenty years ago when he served as Plaintiff's treating physician. Nowhere in any of his notes, during his entire history of treating her, does he opine that Plaintiff was suffering, or had suffered, from pelvic inflammatory disease. Further, it is simply not credible that, if this evidence was to be presented at the trial of this matter, Plaintiff exercised any form of due

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.  Page 3
1998 WL 422900 (D.Conn.)
**(Cite as: 1998 WL 422900 (D.Conn.))**

diligence in securing an opinion allegedly twenty years old any sooner than the present. [FN1]

> FN1. The Court notes further that Dr. Weinstein's letter does not contain a complete statement of all opinions to be expressed and the basis and reasons therefore; the data or other information considered by him in forming his opinion; any exhibits to be used as a summary of or support for his opinion; his qualifications; his compensation; and a listing of any other cases in which he testified as an expert. Fed.R.Civ.P. 26(a)(2)(B).

Dr. Sweet's letter is also merely conclusory and fails to meet the standards of Rule 26(a)(2)(B). His cursory three-paragraph letter does not contain a complete statement of all opinions to be expressed and the basis and reasons therefore; all of the data or other information considered by him in forming his opinion; any exhibits to be used as a summary of or support for his opinion; his qualifications and publications; his compensation; and a listing of any other cases in which he testified as an expert. Fed.R.Civ.P. 26(a)(2)(B). Most importantly, his conclusion that "the defective design of the Dalkon Shield and its tail-string increased the risk for Ms. Gold to develop pelvic inflammatory disease" is not supported in any manner in his alleged "expert" opinion. It does not appear that Dr. Sweet has even examined Plaintiff.

It also is not credible that Plaintiff could not have secured this letter in a time concordant with this Court's Scheduling Order. Dr. Sweet's name and address, with no other information at all, was filed with this Court on April 6, 1998. It is unacceptable, therefore, that his written report was not prepared or filed until two and one-half months later, after summary judgment had been granted.

For these reasons, then, the Court holds that prong two of the *Doe* test is not met herein. The proffered letters are simply not "new evidence previously unavailable."

As to prong three, the Court holds that no clear error of law was made or that a manifest injustice needs to be prevented. First, the Court held that expert testimony was required when the factual content of the underlying issues is not found within the lay persons' common knowledge and experience and that such testimony was required in this case. It is beyond cavil that this holding is not unprecedented, novel, or a remarkable proposition of law. This Court is convinced that no "clear error of law" has been made in so holding.

Second, if any manifest injustice is implicated in the consideration of this Motion, it would be from the granting of the Motion, and it would be to Defendant. Defendant has attempted to work diligently and responsibly with Plaintiff, her constant vilification of Defendant aside. The Trust advised Ms. Gold, in advance, that if she continued to fail to comply with the Court's Scheduling Order, that it would move for summary judgment. This was an uncommon courtesy.

**\*4** Further, Judge Robert R. Merhige, before whom all the nation-wide Dalkon Shield litigation was pending, ordered that trial of all Trust cases be commenced on or before July 31, 1998. Plaintiff has known of this deadline since Judge Merhige entered Administrative Order No. 2 on October 31, 1997. She also knew that this Court intended to comply with this Order by scheduling a July trial date. Despite this knowledge--and to the great detriment of the Trust--Plaintiff has continually failed to comply with this Court's Scheduling Order that would have permitted preparation by the parties and trial of the case within the deadline set by Judge Merhige.

Finally, this Court must comment on Plaintiff's continued insistence on her foibles and tribulations as an alleged *pro se* plaintiff. It is elementary that pleadings filed *pro se* are to interpreted liberally. *Haines v. Kerner,* 404 U.S. 519, 520, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972). It is the belief of this Court that it has more than met this standard. This is regardless of the fact that Plaintiff admits that she is being advised and assisted by attorneys in this case, which attorneys have never filed a formal appearance herein. One of the attorneys has gone so far as to file two affidavits in this case setting forth the legal support for Plaintiff's position. This same attorney has also averred that he has been instrumental in securing the letters of Dr. Sweet and Weinstein. The Court now believes that

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp. Page 4
1998 WL 422900 (D.Conn.)
**(Cite as: 1998 WL 422900 (D.Conn.))**

Plaintiff's pleadings, seemingly filed *pro se,* have given her an unwarranted advantage of having the liberal pleading standard applied by this Court, whilst holding the Defendant to a much stricter scrutiny. *Accord Johnson v. Bd. of County Com'rs, County of Fremont,* 868 F.Supp. 1226, 1231 (D.Colo.1994), *aff'd,* 85 F.3d 489 (10th Cir.1996); *see also Wesley v. Don Stein Buick,* 987 F.Supp. 884 (D.Kan.1997) (court and parties have legitimate concern that attorney who substantially participates in case may be required to enter appearance and accept accountability pursuant to Rule 11 and the rules of professional conduct applicable to attorneys). For this reason, too, a manifest injustice to Defendant would occur if the Court were to grant this Motion.

*CONCLUSION*

"Whatever may be the purpose of Rule 59(e) it should not be supposed that it is intended to give an unhappy litigant one additional chance to sway the judge." *Frito-Lay of Puerto Rico, Inc. v. Canas,* 92 F.R.D. 384, 390 (D.P.R.1981). For this reason, and the reasons set forth herein, Plaintiff's Motion For Reconsideration and to Re-argue [Doc. No. 91] is DENIED.

The Clerk is directed to close this file.

SO ORDERED

1998 WL 422900 (D.Conn.)

**Motions, Pleadings and Filings (Back to top)**

. 5:82CV00383 (Docket)
(Jun. 25, 1982)

END OF DOCUMENT

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.