# Authorization For Use or Disclosure of Protected Health Information

*As required by the Health Insurance Portability and Accountability Act of 1996 (HIPAA) and Connecticut law, a medical practice may not use or disclose your individually identifiable health information without your authorization except as provided in our Notice of Privacy Practices. Your completion of this form means that you are giving permission for the uses and disclosure described below. Please review and complete this form carefully. It may be invalid if not fully completed. You may wish to ask the person or entity you want to receive your information to complete the sections detailing the information to be released and the purposes for the disclosure.*

I hereby authorize <u>Connecticut Family Orthopedics, P.C.</u> to use and disclose health information concerning
<u>Arthur Davies, 1407 Orchard Court, Lafayette, CO  80026</u>
(patient name and address) as follows:

**Description of health information to be used or disclosed** (*If this is an authorization for the use or disclosure of psychotherapy notes, it may not be combined with an authorization for the use and disclosure of any other type of health information except other psychotherapy notes*):
<u>a copy of the medical records and bills for treatment rendered from 5/8/01</u>
<u>through 4/18/04</u>

I understand that this health information may include HIV-related information and/or information relating to diagnosis or treatment of psychiatric disabilities and/or substance abuse and that by signing this form, I am authorizing such information to be disclosed.

~~This health information may be used and/or disclosed by:~~
(name and address of person/entity to use and/or disclose the health information)

**This health information may be disclosed to and used by:**
<u>Howard, Kohn, Sprague & Fitzgerald, PO Box 261798, Hartford, CT  06126</u>
(name and address of person/entity to receive and use the health information)

**The information may be used and disclosed only for the following purposes (if you do not want to explain the purpose, write "At the request of the individual"):**
<u>legal proceedings related to Davies vs Jindal</u>

Expires 8-2-05

© 2002 Connecticut State Medical Society
© 2002 PrivaPlan Associates, Inc.

2

☐ I understand that my health care treatment or benefits will not be affected whether I sign or do not sign this form.

**Effect of Refusal to Sign Authorization**

I understand that my refusal to sign this Authorization will not jeopardize my right to obtain present or future treatment for psychiatric disabilities except where disclosure of the information is necessary for the treatment.

**Marketing**   *Does NoT authorize*

☐ This authorization ~~authorizes~~ marketing activities.
This medical practice ☐ will ☐ will not receive direct or indirect compensation.

I understand that I may revoke this authorization at any time by notifying this medical practice in writing. My revocation will not affect actions taken by this medical practice prior to its receipt.

I understand that, if the recipient of the information is not a health care provider or health plan covered by the federal Privacy Rule, the information used or disclosed as described above may be redisclosed by the recipient and no longer protected by the Privacy Rule. However, other state or federal law may prohibit the recipient from disclosing specially protected information, such as substance abuse treatment information, HIV/AIDS-related information, and psychiatric/mental health information.

This authorization is effective now and will remain in effect until   upon settlement of his case or
(expiration event or date).   8-2-05

I understand that I have the right to receive a copy of this authorization.
Signed: _[signature]_    Dated: 8-5-04
Print Name: A Davies

If not signed by the patient, please indicate relationship: _____

© 2002 Connecticut State Medical Society
© 2002 PrivaPlan Associates, Inc.

Orthopedic Associates of Hartford

## Authorization For Release of Protected Health Information

Arthur Davies, MD          1/19/58          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
**Patient's Name**        **Date of Birth**    **Social Security No.**

I authorize the use or disclosure of my protected health information by Orthopedic Associates of Hartford, P.C. ("OAH") as specified below. I understand that signing this authorization is voluntary and that OAH may not require me to sign this authorization before OAH provides me with treatment. I understand that I have the right to revoke this authorization at any time by providing a signed, written notice of such revocation to OAH. I understand that a description of my right to revoke my authorization is set forth in OAH's Notice of Privacy Practices. I understand that information is being released pursuant to this authorization at my request and that the information may no longer be protected by law or regulation and may be redisclosed by the recipient.

1)  a) Please use or disclose the following health information, if such information exists:
    - ☐ The entire medical record; or
    - ☒ The following limited health information
      a copy of the bills and records for treatment rendered from 5/1/02 through 5/26/04

    b) OAH cannot use or disclose certain information unless you specifically authorize such use or disclosure. **Please initial next to each item below if you specifically authorize the release** of health information relating to the testing, diagnosis or treatment for:
      ___ HIV/AIDS
      ___ Drug and alcohol abuse
      ___ Mental health/psychiatric disorders

2) Please specify the time period for the information you described above to be disclosed:
    - ☐ All information maintained at any time by OAH, or
    - ☒ Information maintained by OAH from: 5 / 1 /02 to: 5 / 26 / 04

3) Please specify who may receive the information requested by this authorization:
    Howard, Kohn, Sprague & Fitzgerald
    PO Box 261798
    Hartford, CT 06126

Unless earlier revoked, this authorization will expire one year from the date signed below, unless you specify an earlier date here: 8 / 2 / 05.

By signing below, I understand and acknowledge the following:
- I have read and understand this Authorization;
- I am authorizing OAH to use or disclose the health information to the person(s) and for the purpose(s) identified in this authorization; and
- If I have any questions about disclosure of my protected health information pursuant to this authorization, I may contact Barbara Mangiafico, OAH Privacy Officer.

_____     _____     Date  8-04-04
Name of Individual,         Signature of Patient
if different than the patient    or Personal Representative

If signed by the patient's personal representative, describe the legal authority of the representative to act on behalf of the patient:
_____

- Legal authority of representative verified by: _____

## AUTHORIZATION FOR RELEASE OF INFORMATION

Section A: Must be completed for all authorizations
I hereby authorize the use or disclosure of my health information as described below. I understand the information disclosed pursuant to this authorization may be subject to redisclosure by the recipient and no longer protected by federal privacy regulations. I agree a copy of this authorization will be as valid as the original.

Patient name: __Arthur Davies__         Date of Birth: __1/19/58__
Address: __1407 Orchard Court__
         __Lafayette, CO  80026__

Persons/organization providing the information:     Persons/organizations receiving the information:
__St. Francis Hospital & Medical Ctr__              __Howard, Kohn, Sprague & Fitzgerald__
__Hartford, CT  06105__                             __PO Box 261798__
                                                    __Hartford, CT  06126__

Specific description of information (including date(s)): __a copy of the bill and ER report__
__for treatment rendered on 4/23/01__

What is the purpose of the use or disclosure?: __legal proceedings__

(Note: "at the request of the individual" is a sufficient description of the purpose when the patient initiates the authorization and elects not to provide a statement of the purpose.)

Section B: Must be completed for all authorizations
I understand that I have the right to refuse to sign this form and that my refusal will not result in the physician conditioning the provision of Healthcare with two exceptions: **1.** Refusal to sign this authorization, if it is for disclosure of information created for research that includes treatment, may result in the physician declining to provide the research-related treatment. **2.** Refusal to sign this authorization, if it is for disclosure of information created for the sole purpose of disclosure to a third party, may result in the doctor declining to provide the healthcare which is for the sole purpose of creating protected health information for disclosure to a third party,
Pt. Initials: __AD__

I understand that this authorization will expire on the following date __8/2/05__ (DD/MM/YR) or with the following event: __upon settlement of his case__

I understand that I may revoke this authorization at any time by notifying the healthcare provider in writing. The revocation will only be effective for the date it is received in this office and will not apply retroactively.
Pt initials: __AD__

_____        __8-4-04__
Signature of patient or patient's representative        Date
(pertinent sections of the Form MUST be completed before signing.)

Printed name of patient's representative: _____
Relationship to the patient: _____

# JOHN H. EHRENREICH, PH.D.
# 19 HOLIDAY POINT ROAD
# SHERMAN, CT 06784

Robert Guendelsberger, Esq.
Guendelsberger and Taylor
28 park Lane Road
New Milford, CT 06776

Dear Mr. Guendelsberger:

    Enclosed is a copy of my report on the battery of psychological and cognitive tests I administered to your client, Arthur Davies, on February 26, 2003. As you will see, he has experienced a very significant decline in cognitive function, presumably as a result of the motor vehicle accident he was in. I am also enclosing a copy of the letter I sent Mr. Davies, summarizing the findings. I have submitted the bill to Kemper Insurance Company, as Barbara in your office requested.

    Please feel free to call if you have any questions.

                                      Sincerely,

                                      John H. Ehrenreich, Ph.D.
                                    Licensed Clinical Psychologist

---

TEL. 860-355-2539      FAX: 860-350-6658      E-MAIL: jehrenreich@hotmail.com

# JOHN H. EHRENREICH, PH.D.
# 19 HOLIDAY POINT ROAD
# SHERMAN, CT 06784

Arthur Davies, M.D.
P.O. Box 270577
Louisville, CO 80027

Dear Dr. Davies:

 I want to give you a summary of the results of the battery of cognitive and psychological tests I administered to you on February 26, 2003.

 I think few of the findings will be surprising to you. Taken as a whole, the testing found evidence of a significant decline in your cognitive function, presumably as a consequence of your accident in April 2001. The declines are in several areas that you already know about: memory, speed of mental processing, and, to a lesser degree, concentration and mental flexibility. More positively, you retain many areas of strength (for example, in most aspects of processing of visual information and in most verbal skills). One factor that complicated interpretation of the test scores is the psychological distress (depression and anxiety) that you are, quite understandably, experiencing. As you know, depression and anxiety depress cognitive function.

 These findings lead to two strong recommendations. First, you could potentially benefit from a systematic program of cognitive rehabilitation. I would suggest you contact the nearest university medical center for a referral near to your home. Second, you would certainly benefit from psychotherapeutic intervention (and possibly psychopharmacological) intervention aimed both at your depression and anxiety and at helping you adapt to the ongoing disabilities resulting from your accident. It may be that improvement in your mental state would itself lead to some improvement in cognitive functioning, as well as reducing the emotional pain you are experiencing.

 When I saw you last month, you expressed concern about your ability to pay for such services. As you know, your lawyer found that you still have coverage under your Kemper policy. If you need assistance in dealing with them, you should call Mr. Guendelsberger's office. When you follow up on these two recommendations (and I very strongly urge you to do so), have the therapists contact me for a copy of the full report. (You'll have to give them a release or send it directly to me, of course).

 I am sending the full report on the findings to your lawyer, Mr. Guendelsberger, as you requested. I am also enclosing a copy of the bill. No action on it is necessary at this time, pending insurance company action. (I have submitted it to the insurance company).

---

**TEL. 860-355-2539 FAX: 860-350-6658 E-MAIL:jehrenreich@hotmail.com**

Please feel free to contact me if you have questions. My best wishes for your continued recovery.

Sincerely,

John H. Ehrenreich, Ph.D.
Licensed Clinical Psychologist

cc: Robert Guendelsberger, Esq.

---

TEL. 860-355-2539    FAX: 860-350-6658    E-MAIL: jehrenreich@hotmail.com

**JOHN H. EHRENREICH, PH.D.**
**19 HOLIDAY POINT ROAD**
**SHERMAN, CT 06784**
**TEL. 1-860-355-2539**

REPORT ON PSYCHOLOGICAL/ NEUROPSYCHOLOGICAL TESTING

**Patient:** Arthur Davies        **Dates of Examination:** 2/26/03

**Date of Birth:** 1/19/58    **Age:** 45    **Sex:** Male    **Highest Grade Attained:** 16+

**Tests Administered:** Wechsler Adult Intelligence Scale – Third Edition (WAIS-III); Wechsler Memory Scale – 2nd Edition; Delis-Kaplan Executive Function Battery (selected subtests); Rey 15-Item Memory Test; Wechsler Test of Adult Reading; Validity Indicator Profile; Multiphasic Personality Inventory (MMPI-II).

**Referral Question**

Testing was undertaken at Dr. Davies own request, to evaluate his cognitive function two years after he was in a serious motor vehicle accident.

**Background**

Dr. Davies is a 45 year old man who was in a serious motor vehicle accident in April 2001. By his own report, he has been diagnosed as having suffered a traumatic brain injury as well as neck injuries that have left him with weakness and loss of sensation in his left hand, arm, and leg and with chronic pain.

Prior to his accident, Dr. Davies was an emergency room physician. He prided himself on his academic achievement, his excellent memory, and his ability to carry out multiple stressful tasks simultaneously. He complains that now, more than a year and a half since the accident, he still has a variety of troubling cognitive symptoms: His speech is tangential. He has difficulty with memory, has trouble concentrating, and "can't think straight." He gets lost when driving and has with household chores and with reading and performing calculations. He fatigues easily despite sleeping excessively. He is depressed and irritable. He is unable to work and is dependant on disability payments from a private insurance plan.

According to Dr. Davies, his medical history prior to the accident was unremarkable. He denies any drug or alcohol usage. He is currently living in Colorado,

with his two children, aged three and seven. He is not married, but the children's mother lives nearby. He returns to Connecticut to permit continuity in his medical care with the physicians who treated him earlier.

## Medications

Dr. Davies takes Motrin (800 mg qid) and Vicodin (5mg-500mg one to two times per day) for pain.

## Behavioral Observations

Dr. Davies arrived, late and apologetic, for his appointment, having grossly miscalculated the time it would take him to travel. He limped when he walked. He responded fully to questions. His speech was fluent but responses were often tangential. When this happened, he sometimes, but not always, caught himself, but then he would have trouble recalling what the question had been. He had no trouble understanding instructions. He worked steadily and diligently, sometimes expressing frustration or discouragement over his inability to do things he thought he should be able to do. He worked very slowly and there was often a slight delay in his initiation of activities. On many tests he failed a number of relatively easy items, only to succeed on more difficult ones, suggesting transient shifts in attention and energy level. He fatigued relatively quickly, needing several breaks (often in the form of a conversation). He exhibited a full range of affect. On several occasions, when talking about the changes in his life or when frustrated, he briefly wept.

Some of these behaviors may have reduced his scores slightly on a few of the tests, but they appear to represent characteristics that Dr. Davies has noticed in his daily life. Taken as a whole, I believe his scores accurately represent his current level of cognitive functioning.

## Test Findings

(Note: Quantitative scores on tests administered can be found appended at end of report)

**Validity**

Formal measures of response style suggest that Dr. Davies' scores on the tests administered were the results of an honest effort on his part to display his actual abilities. He obtained a perfect score on the Rey 15-Item Memory Test, a memory test on which a low score indicates a strong likelihood of malingering. His performance on the Validity Indicator Profile, a measure that assesses the consistency of his responses to a complex set of verbal and non-verbal stimuli, indicates that he intended to do well and that he applied sustained effort to cognitive tasks. His scores on the validity indicators of the MMPI-2, a self report test that includes many items designed to assess response style and

the likelihood that a subject is trying to appear better or worse than he or she actually is, suggest that, if anything, he may tend to minimize his distress and present himself in a positive light.

**Pre-morbid Ability**

Dr. Davies' pre-morbid ability was estimated by several procedures. Formulas based on demographics (age, sex, race, occupation, educational attainment, etc.) alone suggest a pre-morbid Full Scale IQ of 115-126 (depending on which of the several available formulas was used). His ability to read irregularly spelled words, an ability that depends on learning prior to adulthood and which is highly correlated with pre-morbid ability, suggests a pre-morbid Full Scale IQ of 114 and a Wechsler Memory Scale General Memory Index of 112. A formula combining his reading ability and demographic information suggests a pre-morbid IQ of 122 and a Wechsler Memory Scale General Memory Index of 118.

Although it should be emphasized that all of the formulas conventionally used to estimate pre-morbid ability have a considerable range of uncertainty, these procedures consistently indicate that his pre-morbid ability was in the high average or superior range and that his overall memory ability was in the high average range.

**Overall Intelligence**

Dr. Davies' current overall intellectual ability, as measured by the WAIS-III, is in the average range. His Full Scale IQ is 102, which places him in the 55th percentile for people his age. There is no significant discrepancy between his visual spatial abilities (Perceptual Organizational Index = 97) and his verbal abilities (Verbal Comprehension Index = 101). His mental processing speed is very slow, however (Processing Speed Index = 66).

Comparison of Dr. Davies' current performance with the estimates of pre-morbid ability described above suggests that there has been a very substantial drop in Dr. Davies' ability, presumably since his accident.

**Memory**

Dr. Davies' ability to recall orally-presented material that was presented to him out of any meaningful context (e.g., a random sequence of digits, a list of pairs of unrelated "words that go together") immediately after hearing it was in the upper half of the average range. With longer and more complex material (paragraph-length stories), his immediate recall fell to the borderline impaired range. His ability to recall visually-presented material (the sequence in which the examiner touched a series of blocks, photographs of people's faces, drawings of familiar scenes, the sequence in which a series of blocks were touched by the examiner) after a single exposure to them was in the low average to borderline impaired range.