His ability to learn the long set of pairs of "words that go together" through hearing the pairings repeated several times was also in the average range. Repetition of one of the paragraph-length stories produced only very slight increases in how much of it he remembered, however

Dr. Davies' ability to recall the stories and the sets of word pairs after a delay of half an hour was, in absolute terms, in the low average to borderline impaired range. Expressed relative to what he had recalled immediately after hearing the material, his delayed recall was in the low average range. When he was presented with elements of the stories or the pairs of associated words in a recognition format rather than a free recall format, his recognition of material to which he had earlier been exposed was in the borderline impaired range. The fact that his performance using the recognition format was no better than in the free recall format suggests that the deficits in his long term memory represent a failure to encode and store information, not a difficulty in retrieving previously stored information. Consistent with this hypothesis, his fund of knowledge, which, among other things, depends on having an intact ability to retrieve information that has previously been stored, was n the high average range.

His ability to recall the photographs of faces he had seen earlier after a half hour delay was in the low average range. He recalled essentially nothing of the drawings of familiar scenes after a delay, a performance which was in the impaired range.

Dr. Davies' incidental memory (ability to recall visual material used in a non-memory test, which he had not been explicitly instructed to try to remember) was in the borderline impaired range.

On tests of visual and auditory working memory (holding material in mind while using it to solve a problem), Dr. Davies' performance was in the average range. His scores on measures of his ability to solve a series of arithmetic problems in his head, to reorganize a random series of numbers and letters in a prescribed way, to repeat a random series of digits in an order reversing that in which he had heard them, and to touch a series of blocks in an order reversing that in which the examiner had touched them were all in the average range.

Overall, Dr. Davies' performance on measures of short term recall of short, meaningless bits of information and his ability to hold similar material in his mind while using them to solve a problem were in the average range. All other aspects of memory that were assessed were, at best, in the low average range, and in many cases, in the borderline impaired or impaired range. Comparison of his current performance on memory tasks with the estimates of pre-morbid ability described above suggests that there has been a very substantial drop in Dr. Davies' memory function, presumably since his accident.

**Speech and Language**

Dr. Davies' vocabulary, measured by his ability to define a series of words, was in the high average range. His ability to articulate the common category to which a pair of words (e.g., "apple" and "banana," "eye" and "ear") belonged, a task that requires the ability to form abstract verbal concepts, was in the low average range. His abilities to rapidly retrieve words in a specified semantic category (e.g., names of different kinds of animals) or in a specified phonemic category (words beginning with a specified letter) were in the impaired range. Qualitatively, his speech was fluent and he had no trouble expressing himself or understanding what was said to him. However, he was quite tangential.

**Visual Processing**

Dr. Davies' scores on measures of visual processing abilities were erratic. At his best, his ability to reason with visually presented materials was in the superior range and his ability to use visual detail in pictures of familiar scenes to recognize temporal and causal relationships among the scenes was in the high average range. His ability to distinguish essential from inessential details in pictures of familiar objects and his ability to analyze an abstract design, shown by his ability to reproduce the design with colored blocks, were in the low average range, however. The reason for the discrepancy is not evident. On both of the tasks he had trouble on, he appeared to be struggling hard to find the correct answers and was visibly frustrated by his failure.

**Fine Motor Function and Visual Motor Integration**

Dr. Davies complains that his injury has left him with numbness and weakness, primarily on his left side. The speed with which he could copy a series of small abstract symbols (with his right, dominant hand) was in the impaired range. In copying the symbols, he made a number of errors which he spontaneously corrected. Although his visual motor integration abilities were not systematically tested, he appeared to have difficulty with visually guided fine motor tasks.

**Executive Functions**

"Executive functions" are the functions required for control of mental activity -- e.g., attending, concentrating, planning, organizing, controlling impulses, retrieving memories fluidly. Dr. Davies' mental processing speed, measured by his ability to perform very easy visual and verbal tests in which the principle variation in a person's performance comes from variations in processing speed, was in the impaired range. His mental flexibility, shown on a task requiring him to shift back and forth rapidly between alternating conceptual tasks, was in the impaired range. His ability to maintain set on a task that contained distractions internal to the task was in the impaired range. This test requires intact selective attention and response inhibition. It should be noted that, on the

latter two tasks, he worked very slowly, which may have played a major role in reducing his scores. Qualitatively, at times he had trouble concentrating or staying on task.

**Personality and Emotional Issues**

Based on my interview with Dr. Davies and with his responses to a lengthy self-report questionnaire, Dr. Davies is experiencing a clinically significant level of psychological distress at this time. He continues to experience pain from his injuries. He feels anger at the doctors for not being able to help him. He is depressed. He can not get the events of his accident out of his mind, experiences distress when in a car and avoids driving on expressways when he can. He feels "strange" when with other people and he finds it hard to relate to people other than his children. He feels insecure and pessimistic about his future. He is irritable and has difficulty concentrating. He meets the standard criteria for a diagnosis of Post Traumatic Stress Disorder, although some of his symptoms may be a result of his physical injuries rather than psychological distress (e.g., his difficulty sleeping may reflect chronic pain).

## Summary and Conclusions

Taken as a whole, the testing provides substantial evidence for a major decline in Dr. Davies' cognitive function compared to his earlier levels of functioning.

Dr. Davies' current overall level of intellectual functioning is in the average range. Although he shows scattered islands of strength, in general his cognitive ability is far below the high average or superior range which apparently characterized him prior to his accident. His mental processing speed is very slow, and, despite intact short term memory for more or less meaningless material, his overall memory functioning is in the impaired range. He also shows deficits in some aspects of visual processing, in fine motor control, in mental flexibility, in ability to concentrate and stay on a task (or to stay on the subject when speaking), and in ability to filter out distracting stimuli. He is depressed and shows symptoms meeting the usual criteria for a diagnosis of PTSD (although some of his symptoms may reflect his physical injuries).

Dr. Davies' cognitive impairments presumably represent the *sequelae* of a traumatic brain injury. Although I have no information on his pre-morbid emotional functioning, his emotional symptoms are what would be expected in response to a traumatic experience and to his own disability. While it is possible that there will be spontaneous improvement in some aspects of his cognitive functioning, almost two years have elapsed since his injury and the greater part of the recovery that can be expected has probably already occurred.

Dr. Davies could potentially benefit from a systematic program of cognitive rehabilitation. He can draw on his relatively strong verbal abilities, his short term memory, and his ability to reason about visual material to help him compensate for his weaknesses. He also would benefit from psychotherapeutic intervention aimed both at his

current depression and post-traumatic symptomatology and at helping him adjust to his disability and make plans for his future.


_____    _3/11/03_____
**John H. Ehrenreich, Ph.D.**    **March 1, 2003**
**Licensed Clinical Psychologist**
**Connecticut License 001616**

**Test Scores, Arthur Davies, February 26, 2003**

(**Note:** Test scores are provided for reference purposes only. See notes on "Interpretation of Test Scores" attached at end of this report)

**WAIS-III:**    *Full Scale IQ = 102*    *(90% confidence limits 99-105 )*

| | | | |
|---|---|---|---|
| Vocabulary | 12 | Picture Arrangement | 13 |
| Similarities | 7 | Picture Completion | 8 |
| Information | 12 | Block Design | 6 |
| Comprehension | 13 | Matrix Reasoning | 15 |
| Arithmetic | 11 | Coding/Digit Symbol | 3 |
| Digit Span | 14 | (Incidental Learning: Pairing 5th %ile) | |
| (DF =8; DB =6) | | (Coding: Copy Speed: 2nd %ile) | |
| Letter-Number Sequences | 11 | Symbol Search | 3 |

*Verbal IQ =108*                                *Performance IQ = 92*
*(90% conf. limits 104-112)*             *(90% conf. limits 87-98 )*

*Factor Scores:*    VCI = 101    POI = 97    WMI =111    PSI = 66

**Delis-Kaplan Executive Function System**

Trail Making Test

| | |
|---|---|
| Visual Scanning | 1 |
| Number Sequencing | 1 |
| Letter Sequencing | 1 |
| Number-Letter Switching | 1 |
| Motor Speed | 10 |

Verbal Fluency

| | |
|---|---|
| Letter Fluency | 4 |
| Category Fluency | 2 |
| Category Switching | 3 |
| Switching Accuracy | 5 |

Color - Word Interference

| | |
|---|---|
| Color Naming | 1 |
| Word Reading | 1 |
| Inhibition | 3 |

**Wechsler Memory Scale-3rd Edition**

| | | | |
|---|---|---|---|
| Logical Memory I | 4 | Verbal Paired Associates I | 9 |
| Logical Memory II | 5 | Verbal Paired Associates II | 7 |
|    1st recall | 5 |    1st recall | 11 |
|    Learning slope | 9 |    Learning slope | 8 |
|    % retention | 7 |    % retention | 7 |
|    Thematic Total: Immediate | 5 | | |
|    Thematic Total: Delayed | 5 | | |
| Faces I | 6 | Family Pictures I | 3 |
| Faces II | 7 | Family Pictures II | 1 |
|    % retention | 12 |    % retention | 1 |

Letter Number Sequencing   11
Spatial Span   7
Auditory Recognition Delayed   5
Mental Control   6

SUMMARY SCORES (Standard Scores)

*General Memory*   66   *(90% confidence limits 62-76)*

| | | | |
|---|---|---|---|
| Auditory Immediate | 80 | Single Trial Learning | 21st %ile |
| Visual Immediate | 65 | Learning Slope | 25th %ile |
| Immediate Memory | 67 | Retention | 11th %ile |
| Auditory Delayed | 77 | | |
| Visual Delayed | 62 | | |
| Auditory Recognition Delayed | 75 | | |
| Working Memory | 93 | | |

**Wechsler Test of Adult Reading**

Standard Score   120

**Rey Symptom Validity Test**

Recall: 15 of 15 items (valid)

**Validity Indicator Profile**

| | |
|---|---|
| Nonverbal subtest: | Valid |
| Verbal Subtest: | Valid |

**Estimates of Pre-Morbid WAIS Full Scale IQ and Wechsler General Memory Index**

| Method of Estimation | FSIQ | WMI |
|---|---|---|
| Barona Index | 118 | - |
| Crawford Index | 126 | - |
| WTAR: demographics | 115 | - |
| WTAR | 114 | 112 |
| WTAR + demographics | 122 | 118 |

**Minnesota Multi-Phasic Personality Inventory (MMPI-2)**

| | | |
|---|---|---|
| Validity Scales: | VRIN | 42 |
| | TRIN | 50 |
| | F | 55 |
| | F(B) | 41 |
| | L | 56 |
| | K | 62 |
| | S | 71 |
| Clinical Scales: | Hs | 81 |
| | D | 74 |
| | Hy | 84 |
| | Pd | 52 |
| | Mf | 54 |
| | Pa | 53 |
| | Pt | 59 |
| | Sc | 67 |
| | Ma | 36 |
| | Si | 49 |

## Interpretation of Test Scores

In interpreting test scores, consider the following:

1. Scores on any individual test are unreliable. A child's performance may vary from one day to another, and different measures of what appears to be the same ability may differ in subtle ways. As a result, small differences in scores have little meaning and interpretation of a single test score in isolation can be misleading.

2. A child can receive the same score on a particular test for different reasons. For instance, he or she may work quickly but inaccurately or slowly and accurately and get the same number of items right. Interpretation of a final test score without knowledge of <u>how</u> the score was achieved can be misleading.

3. No test measures only one single cognitive ability. For instance, a test of mathematical ability may require verbal comprehension, memory, attention, and other abilities as well as math abilities, and if any of these are impaired, it will adversely affect the "math" score. Interpretation of individual tests without examination of the overall pattern of tests can be misleading.

4. Test scores represent performance in a very specific situation. While they are often a good guide to how a child functions in the "real world," they are not perfect indicators and they must be evaluated in context of historical and current behaviors reported by parents, teachers, and other informants.

Test scores are reported as "raw scores" (e.g., the actual number of items answered correctly); as "standard scores" (mean = 100); as "scaled scores" (mean = 10); as "T scores" (mean = 50); or as "percentiles" (the percentage of children the same age who would achieve this particular child's score or below).

Differences of less than 10 –15 points in standard scores are generally of little significance. Differences in percentile scores should be interpreted very cautiously. A twenty percentile point difference in the middle range of test scores (e.g., 40th percentile vs. 60th percentile) means very little; a twenty percentile point difference in the lower or higher parts of the range (e.g., 25th percentile vs. 5th percentile) may be quite significant.

### Table 1: Equivalent Scores on Various Scales

| Standard Score | Scaled Score | T score | Percentile |
|---|---|---|---|
| 130 | 16 | 70 | 98 |
| 120 | 14 | 63 | 91 |
| 110 | 12 | 57 | 75 |
| 100 | 10 | 50 | 50 |
| 90 | 8 | 43 | 25 |
| 80 | 6 | 37 | 9 |
| 70 | 4 | 30 | 2 |

### Table 2: Interpreting Score Ranges

| Clinical Interpretation | Standard Score | Scaled Score | T Score | Percentile |
|---|---|---|---|---|
| Very superior range | 130 and above | 16 and above | 70 and above | 98 and above |
| Superior range | 120-129 | 14-16 | 63-69 | 91-97 |
| High Average range | 110-119 | 12-14 | 57-62 | 75-90 |
| Average range | 90-109 | 8-12 | 43-56 | 25-74 |
| Low Average range | 80- 89 | 6- 8 | 37-42 | 9-24 |
| Borderline range | 70- 79 | 4- 6 | 30-36 | 3- 8 |
| Impaired range | 69 and below | 3 and below | 29 and below | 2 and below |

```
01:06/04 18:28:18 6610 6229 004    946
W MERCER      1010245327465
ARTHUR DAVIES
  119450 SQUARE RACK S         429.84 T
              SUBTOTAL          429.84
  SALES TAX 1                    32.78
              TOTAL             462.62
              CASH TEND         100.00
              DEBIT TEND        162.53
              CHANGE DUE          0.09
              PAY FROM PRIMARY
INT DEBIT                       .....4505
ACCOUNT:
  352.63 TOTAL PURCHASE
REF # 400760138500
NETWORK ID. 0090 APPR CODE 743831
           01/06/04  18:28:13

TE# 9084 8050 R08D 7933 A3B3 3
0925494270M00299R1892519246063000H00
  01/06/04           18:28:18
```

# Doctor in the House

Page: 1

842 W. South Boulder Rd
Louisville, CO 80027
Phone: (303) 926-0446
Fax: (303) 926-0450

**Patient**

Arthur Davies
P O Box 270577
Louisville, CO
80027

**Responsible Party**

Arthur Davies
P O Box 270577
Louisville, CO
80027

| Date | Service or Product | Charge | Payment | | Balance |
|---|---|---|---|---|---|
| May 26, 2004 | Office/outpatient visit, e | $110.00 | | | |
| Aug 18, 2004 | P-Insurance | | $0.00 | (11) | $110.00 |
| Jul 01, 2004 | Office/outpatient visit, e | $175.00 | | | |
| Aug 18, 2004 | P-Insurance | | $0.00 | (11) | $175.00 |
| Total | | $285.00 | $0.00 | | $285.00 |

--------For proper credit, please enclose this bottom portion with payment--------

| Date | Account Nbr | Patient | Payment |
|---|---|---|---|
| Sep 02, 2004 | 13220 | Arthur Davies | |

Item Descriptions
(11)-Requires patient payment

**Provider**

Doctor in the House
842 W. South Boulder Rd
Louisville, CO 80027