UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| ARTHUR W. DAVIES | : | NO: 3:03 CV 0341 (CFD) |
| vs. | : | |
| PAWAN JINDAL, et al | : | AUGUST 9, 2006 |

**MEMORANDUM IN SUPPORT OF
SUPPLEMENTAL MOTION FOR SUMMARY JUDGMENT**

BACKGROUND

This action for bodily injuries arising out of an April 20, 2001 motor vehicle accident was initiated in March of 2003 by summons served upon the defendant Pawan Jindal. The plaintiff later moved to add Surinder Jindal as a defendant, and Surinder was served on May 29, 2004.

By Orders dated August 12, 2005, the Court provided notice that it was converting Surinder Jindal's Motion to Dismiss to a Motion for Summary Judgment. Surinder Jindal filed his Memorandum, with accompanying documentation, in support of his Motion for Summary Judgment on September 12, 2005. Docket Entries 81 & 82. The plaintiff filed his Objection and accompanying documents on October 31, 2005. Docket Entries 84-86. The Surinder Jindal's reply was filed on November 8, 2005. Docket Entry 88.

Meanwhile, on September 21, 2005, the court held a telephonic status conference,

1

during which plaintiff's counsel revealed that the plaintiff had filed for bankruptcy in Colorado and that counsel had not yet been appointed to continue to prosecute the matter. Further, in November of 2005, it was reported by counsel for the co-defendant that the plaintiff had called his office and left messages that he had terminated Attorney Guendelsberger and that he no longer wanted to pursue this litigation. In light of the questions regarding the authority of plaintiff's counsel to act, discovery and other activity in the file has been delayed over 10 months.

When no further report was provided by plaintiff's counsel regarding the bankruptcy matter or his supposed discharge, investigation was initiated by counsel for Surinder Jindal. Documents obtained from the bankruptcy court file reveal that in his Schedule B - Personal Property, ¶20, the plaintiff listed this action as "Personal injury claim - uncollectible." He repeated this description in Schedule C - "Personal injury claim - uncollectible." He further listed Guendelsberger & Taylor as an unsecured creditor with a debt to be discharged. Schedule F, page 1 of 6. The plaintiff was represented by counsel in the bankruptcy proceedings. Based upon these submissions, a discharge was entered on November 9, 2005.

On December 7, 2005, the Bankruptcy Trustee filed an Application to Employ Guendelsberger & Taylor as Special Counsel to prosecute this Connecticut action. In his Objection filed December 30, 2005, the plaintiff made the following representations:

> 3. Debtor scheduled this claim as uncollectible due to his belief that he had previously discharged Mr. Guendelsberger's representation in this matter and because of the Debtor's present medical condition and disabilities, he had no intention to further pursue the matter.
>
> 4. Nevertheless Debtor scheduled the claim and discussed it in full with the Chapter 7 Trustee at the creditors meeting.
>
> \*   \*   \*
>
> 15. Debtor is in no position to assist in the prosecution of this matter nor does he have funds sufficient to attend pre-trial or trial matters in Connecticut.
>
> 16. As Debtor does not want to pursue this claim it appears that the only beneficiary of this pursuit would be personal injury counsel and the lien holder.

Application to Employ, pp. 1-2.

A hearing on the Application to Employ special counsel was held before The Honorable Elizabeth R. Brown, Bankruptcy Judge, on February 23, 2006. Ultimately, the judge ruled that the Application should be denied because the Trustee failed to timely challenge the plaintiff's claim that the entire lawsuit was exempt from bankruptcy. T at 23-24. However, the reason why the Trustee failed to make such a challenge is critical. In response to the Bankruptcy Court Judge's inquiry as to whether the asset and the claim of exemption were listed in the Schedules, the Trustee stated as follows:

> Mr. Weinman: Yes, I believe it was, and I think there was some discussion at it as well – of it as well at the 341 [creditors' meeting], and the emphasis was on the collectibility of it and it's just a waste of time.
> And, you know, the debtor sort of persuaded me of that, but then I

-3-

> got some frantic phone calls from Mr. Guendelsberger and he persuaded me that maybe there's something to it. That's the nature of a trustee's practice, so . . .
>
> The Court: Thank you.
>
> Mr. Weinman: Okay.

T. at 21. In other words, the plaintiff states that he discussed this lawsuit, which he had listed as uncollectible, with the Trustee at the creditors' meeting, and the Trustee affirms that conversation and its effect in convincing the Trustee not to pursue the claim in bankruptcy because it was an uncollectible waste of time. It was that decision not to pursue the claim, induced by the plaintiff, that was ultimately held to defeat the Trustee's later effort to pursue the matter through Attorney Guendelsberger.

Despite his prior representations to the Bankruptcy Court and to the Trustee, the plaintiff now attempts to reverse his position and proceed with this action free and clear of any claim of the bankruptcy estate or creditors. The defendant Surinder Jindal respectfully submits that, having prevailed in the Bankruptcy Court on the basis of repeated representations that this matter would not be pursued, the doctrine of judicial estoppel prevents the plaintiff from continuing his prosecution of this action.

ARGUMENT

The United States Supreme Court has recognized and discussed the doctrine of judicial estoppel.

-4-

"[W]here a party assumes a certain position in a legal proceeding, and succeeds in maintaining that position, he may not thereafter, simply because his interests have changed, assume a contrary position, especially if it be to the prejudice of the party who has acquiesced in the position formerly taken by him." Davis v. Wakelee, 156 U.S. 680, 689, 15 S.Ct. 555, 39 L.Ed. 578 (1895). This rule, known as judicial estoppel, "generally prevents a party from prevailing in one phase of a case on an argument and then relying on a contradictory argument to prevail in another phase." Pegram v. Herdrich, 530 U.S. 211, 227, n. 8, 120 S.Ct. 2143, 147 L.Ed.2d 164 (2000); see 18 Moore's Federal Practice § 134.30, p. 134-62 (3d ed. 2000) ("The doctrine of judicial estoppel prevents a party from asserting a claim in a legal proceeding that is inconsistent with a claim taken by that party in a previous proceeding"); 18 C. Wright, A. Miller, & E. Cooper, Federal Practice and Procedure § 4477, p. 782 (1981) (hereinafter Wright) ("absent any good explanation, a party should not be allowed to gain an advantage by litigation on one theory, and then seek an inconsistent advantage by pursuing an incompatible theory").

Although we have not had occasion to discuss the doctrine elaborately, other courts have uniformly recognized that its purpose is "to protect the integrity of the judicial process," Edwards v. Aetna Life Ins. Co., 690 F.2d 595, 598 (C.A.6 1982), by "prohibiting parties from deliberately changing positions according to the exigencies of the moment," United States v. McCaskey, 9 F.3d 368, 378 (C.A.5 1993). See In re Cassidy, 892 F.2d 637, 641 (C.A.7 1990) ("Judicial estoppel is a doctrine intended to prevent the perversion of the judicial process."); Allen v. Zurich Ins. Co., 667 F.2d 1162, 1166 (C.A.4 1982) (judicial estoppel "protect [s] the essential integrity of the judicial process"); Scarano v. Central R. Co., 203 F.2d 510, 513 (C.A.3 1953) (judicial estoppel prevents parties from "playing 'fast and loose with the courts' " (quoting Stretch v. Watson, 6 N.J.Super. 456, 469, 69 A.2d 596, 603 (1949))). Because the rule is intended to prevent "improper use of judicial machinery," Konstantinidis v. Chen, 626 F.2d 933, 938 (C.A.D.C.1980), judicial estoppel "is an equitable doctrine invoked by a court at its discretion," Russell v. Rolfs, 893 F.2d 1033, 1037 (C.A.9 1990) (internal quotation marks and citation omitted).

-5-

"[W]here a party assumes a certain position in a legal proceeding, and succeeds in maintaining that position, he may not thereafter, simply because his interests have changed, assume a contrary position, especially if it be to the prejudice of the party who has acquiesced in the position formerly taken by him." Davis v. Wakelee, 156 U.S. 680, 689, 15 S.Ct. 555, 39 L.Ed. 578 (1895). This rule, known as judicial estoppel, "generally prevents a party from prevailing in one phase of a case on an argument and then relying on a contradictory argument to prevail in another phase." Pegram v. Herdrich, 530 U.S. 211, 227, n. 8, 120 S.Ct. 2143, 147 L.Ed.2d 164 (2000); see 18 Moore's Federal Practice § 134.30, p. 134-62 (3d ed. 2000) ("The doctrine of judicial estoppel prevents a party from asserting a claim in a legal proceeding that is inconsistent with a claim taken by that party in a previous proceeding"); 18 C. Wright, A. Miller, & E. Cooper, Federal Practice and Procedure § 4477, p. 782 (1981) (hereinafter Wright) ("absent any good explanation, a party should not be allowed to gain an advantage by litigation on one theory, and then seek an inconsistent advantage by pursuing an incompatible theory").

Although we have not had occasion to discuss the doctrine elaborately, other courts have uniformly recognized that its purpose is "to protect the integrity of the judicial process," Edwards v. Aetna Life Ins. Co., 690 F.2d 595, 598 (C.A.6 1982), by "prohibiting parties from deliberately changing positions according to the exigencies of the moment," United States v. McCaskey, 9 F.3d 368, 378 (C.A.5 1993). See In re Cassidy, 892 F.2d 637, 641 (C.A.7 1990) ("Judicial estoppel is a doctrine intended to prevent the perversion of the judicial process."); Allen v. Zurich Ins. Co., 667 F.2d 1162, 1166 (C.A.4 1982) (judicial estoppel "protect [s] the essential integrity of the judicial process"); Scarano v. Central R. Co., 203 F.2d 510, 513 (C.A.3 1953) (judicial estoppel prevents parties from "playing 'fast and loose with the courts' " (quoting Stretch v. Watson, 6 N.J.Super. 456, 469, 69 A.2d 596, 603 (1949))). Because the rule is intended to prevent "improper use of judicial machinery," Konstantinidis v. Chen, 626 F.2d 933, 938 (C.A.D.C.1980), judicial estoppel "is an equitable doctrine invoked by a court at its discretion," Russell v. Rolfs, 893 F.2d 1033, 1037 (C.A.9 1990) (internal quotation marks and citation omitted).

-5-

<u>New Hampshire v. Maine</u>, 532 U.S. 742, 749-50 (2001).

> Although this estoppel doctrine is equitable and thus cannot be reduced to a precise formula or test, "several factors typically inform the decision whether to apply the doctrine in a particular case: First, a party's later position must be clearly inconsistent with its earlier position. Second, courts regularly inquire whether the party has succeeded in persuading a court to accept that party's earlier position …. A third consideration is whether the party seeking to assert an inconsistent position would derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped." <u>New Hampshire v. Maine</u>, 532 U.S. at 750-751, 121 S.Ct. 1808 (citations and internal quotation marks omitted).

<u>Zedner v. United States</u>, — U.S. —, 126 S.Ct. 1976, 1987 (2006).

There can be no question that the plaintiff's decision to continue this litigation is clearly inconsistent with his representations to the Bankruptcy Court and Bankruptcy Trustee. He told the Bankruptcy Court the matter was uncollectible and that he had no intention of pursuing it; he convinced the Trustee that it was an uncollectible waste of time. Now, however, freed of the claims of creditors, he proceeds with the litigation he previously disavowed. Where judicial estoppel is intended to protect the integrity of the judicial process and prevent parties from playing fast and loose with the courts, the plaintiff's inconsistent positions cannot be allowed.

Second, the plaintiff's prior position was adopted by the Bankruptcy Court, leading to "the perception that either the first or second court was misled" and the risk of inconsistent court determinations. <u>New Hampshire v. Maine</u>, 532 U.S. at 750-51. The

Bankruptcy Court's discharge and its subsequent determination that this lawsuit was exempt from the bankruptcy were the direct result of the plaintiff's representations to the Court and to the Trustee that he did not intend to pursue the claim, which was an uncollectible waste of time. Had the plaintiff not made such representations, that the estate had no appreciable assets and convincing the Trustee not to make a timely challenge to the claim of exemption, the Bankruptcy Court could not have discharged the debtor or made the ruling that it did.

Judicial estoppel commonly arises out of bankruptcy proceedings because of the nature of the representations that must be made in such proceedings.

> Judicial estoppel arises frequently in the bankruptcy context because each and every debtor, at the moment the debtor files its petition for relief and corresponding Schedules, asserts a position with respect to its assets and liabilities which is relied upon by creditors and the bankruptcy court. Typically, judicial estoppel is applied where a debtor omits potential causes of action against third parties from its Schedules and then, after obtaining a discharge or confirmation of its plan of reorganization, asserts such causes of action in a subsequent action for its own benefit.

Gottlieb & Greer, The Doctrines of Standing and Judicial Estoppel: How Actions or Omissions in Bankruptcy Proceedings May Preclude The Assertion of Claims by a Debtor in a Subsequent Action, 9 J. Bankr. L. & Prac. 487, 492 (2000) (footnotes omitted). *See* Tuttle v. Equifax Check Services, Inc., 1997 WL 835055 (D.Conn. 6/17/97)("Plaintiff, having obtained judicial relief in his bankruptcy proceeding without disclosure of his . . .

-7-

claims, cannot now resurrect them and obtain relief on the opposite basis.")(citations and internal quotation marks omitted).

The plaintiff's conduct in this matter is at least equivalent to and arguably worse than the failure to schedule a claim that led to the application of judicial estoppel in <u>Tuttle</u> and similar cases. Here, the plaintiff scheduled the claim, but scheduled it as uncollectible and affirmatively represented to the Bankruptcy Court and the Trustee that the claim was a waste of time and that he did not intend to pursue it, succeeding in obtaining a discharge and defeating the Trustee's late challenge to that position because the Trustee believed the representations. If the mere omission of the claim leads to estoppel, the active representation of the claim in an manner inconsistent with its continued prosecution cannot lead to a different result.

The plaintiff's discharge of her debt and defeat of the Bankruptcy Trustee's effort to control this claim are an unfair advantage that satisfy the third consideration recited by the Supreme Court. <i>See, e.g.</i>, <u>Cannon-Stokes v. Potter</u>, No. 05-4605 (7th Cir. 7/5/06)(slip opinion)("Cannon-Stokes had represented that she had no claim against the Postal Service (or anyone else); that representation had prevailed; she had obtained a valuable benefit in the discharge of her debts. Now she wants to assert the opposite in order to win a second time. That satisfies the requirements of judicial estoppel.").

Moreover, this third "consideration" noted by the Supreme Court is not required to

-8-

apply judicial estoppel. The Second Circuit has commonly recited the doctrine with only the first two elements. *See, e.g.*, Stichting v. Schrieber, 407 F.3d 34, 45 (2005); Rodal v. Anesthesia Group of Onondaga, PC, 369 F.3d 113, 118 (2nd Cir. 2004). As noted by one commentator, "[t]he circuits have also disputed whether judicial estoppel requires privity, with the majority holding that neither privity or detrimental reliance is required. These courts reasoned that because the purpose of judicial estoppel is to protect the courts and not the litigants, prejudice to litigants is irrelevant." Note, Judicial Estoppel and Inconsistent Positions of Law Applied to Fact and Pure Law, 89 Cornell L. Rev. 191, 199 (2003). "

> Unlike the doctrines of equitable estoppel or promissory estoppel, a party may assert judicial estoppel without demonstrating any reliance on the party's prior inconsistent position. This is harmonious with the purpose of judicial estoppel – to preserve judicial integrity by precluding litigants from playing fast and loose with the courts – whereas the purpose of both equitable and promissory estoppel is to ensure the fairness of the relationship between the parties.

Gottlieb & Greer, *supra*, 9 Bankr. L. & Prac. at 490-91 (footnotes omitted). *Accord* Note, *supra*, 89 Cornell L. Rev. at 199 n. 46 (The Supreme Court's reference to unfair detriment "should not be considered an endorsement of the detrimental reliance view; rather this language addresses the culpability of the party being estopped. . . . The factor of detrimental reliance more properly falls under the rubric of equitable estoppel."); Anderson & Holober, Preventing Inconsistencies in Litigation with a Spotlight on

<u>Insurance Coverage Litigation: The Doctrines of Judicial Estoppel, Equitable Estoppel, Quasi-Estoppel, Collateral Estoppel, "Mend the Hold," "Fraud on the Court" and Judicial and Evidentiary Admissions</u>, 4 Conn. Ins. L. J. 589, 632-33 (1998).

The plaintiff's conduct in representing to the Bankruptcy Court and Trustee that he did not intend to pursue this case, which was an uncollectible waste of time, resulted in the Bankruptcy Court discharging his debts and denying the Trustee permission to challenge his claim of exemption, all to his unfair advantage based on his present efforts to continue this litigation. Judicial estoppel must be applied to protect the integrity of the judicial system from this abuse.

CONCLUSION

Ultimately, judicial estoppel has no "inflexible prerequisites or an exhausitive formula;" <u>New Hampshire v. Maine</u>, 532 U.S. at 751; it is equitable in nature and depends upon the Court's assessment of all relevant considerations. Here, the plaintiff was represented by counsel in the Colorado bankruptcy proceeding, where he affirmative represented to the Court and the Trustee that the present litigation was worthless and a waste of time, succeeding in obtaining a discharge free of any bankruptcy interest or involvement in this litigation. Faced with his wholly contradictory effort to pursue this litigation now that the bankruptcy is behind him, protection of the integrity of the judicial process demands that he be held to his prior representations. The Court should therefore

-10-

enter summary judgment against the plaintiff.

            THE DEFENDANT
            SURRINDER JINDAL


BY_____
Jack G. Steigelfest. (Fed. Bar No. ct05733)
Howard, Kohn, Sprague & FitzGerald
Post Office Box 261798
Hartford, Connecticut  06126-1798
(860) 525-3101


**CERTIFICATION**

    I hereby certify that a copy of the foregoing was mailed, U.S. Mail - postage prepaid, on this the 9th day of August, 2006, to:

Robert J. Guendelsberger, Esq.
28 Park Lane
New Milford, CT 06776

Fred Vollono, Esq.
Law Offices of Nancy S. Rosenbaum
655 Winding Brook Drive
Glastonbury, CT 06033

            _____
            Jack G. Steigelfest, Esq.
            Howard, Kohn, Sprague & FitzGerald

-11-