# EXHIBIT 3A

1

```
 1              IN THE UNITED STATES BANKRUPTCY COURT
 2                 FOR THE DISTRICT OF COLORADO
 3
 4     In re:                        :
 5                                   : Case No. 05-28660 EBB
 6     ARTHUR WILLIAM DAVIES,        :
 7                                   :
 8                                   :
 9          Debtor.                  :
10     _____:
11                                   :
12          EVIDENTIARY HEARING      :
13     _____:
14
15
16                                   721 19th Street
17                                   Denver, CO  80202
18
19                                   February 23, 2006
20                                   2:51 p.m.
21
22
23        BEFORE THE HONORABLE ELIZABETH E. BROWN, Bankruptcy Judge
24
25     APPEARANCES:
26
27     For the Debtors:             Barton L. Balis, Esq.
28
29     Pro Se Trustee:              Jeffrey Weinman, Esq.
30
31     For Whitehaven Funding:      Joel Shafferman, Esq.
32                                  (By telephone)
33
34
35
36
37
38
39
40
41
42
43
44
45
46             (Proceedings recorded by electronic sound recording,
47     transcript prepared by transcription service at the request of
48     Jack Steigelfest, Esq., ordered 7-7-06, regular delivery, cost of
49     $90.00.)
50
```

                AVERY/WOODS REPORTING SERVICE, INC.
      455 SHERMAN STREET, SUITE 250, DENVER, CO   80203
             303-825-6119     FAX 303-893-8305

2

```
 1                    P R O C E E D I N G S
 2            THE COURT: That brings us to the case of In Re: Arthur
 3    William Davies, Case No. 05-28660. This is a nonevidentiary
 4    hearing on the application to employ special counsel and the
 5    debtor's objection.  Could we have appearances on this matter,
 6    please.
 7            MR. WEINMAN: Jeff Weinman, Your Honor, pro se, trustee
 8    in the case.
 9            THE COURT: Thank you.
10            MR. BALIS: Good afternoon, Your Honor.  Barton S. Balis
11    on behalf of the debtor who is also present in the courtroom.
12            THE COURT: Okay.  Thank you.
13            MR. SHAFFERMAN: And on -- on the phone, Your Honor,
14    Joel Shafferman, counsel for Whitehaven Funding, which is
15    (inaudible) limited objection.
16            THE COURT: Thank you.  Okay.  I am very curious and
17    could not find in the papers -- it may be here, but I must have
18    missed it then -- what this lawsuit is, this personal injury
19    lawsuit.  I know where it's pending, but I don't know the nature
20    of it, and I'm very curious to hear why the debtor cares, if the
21    debtor doesn't want to pursue it, and why the trustee wants to
22    pursue it, and why the trustee thinks that postpetition earnings
23    would be property of the estate.  Because a lot of this seems
24    like is a fight -- I'm forecasting for both you my issues right
25    now.  A lot of this seems to be fighting over future earnings
```

3

1    that are going to be lost, and how would a Chapter 7 trustee glom

2    onto future earnings of a Chapter 7 debtor.

3           So who would like to begin?

4           MR. BALIS:  Well, I can begin, Your Honor, not

5    necessarily to answer all of your concerns.  I don't know whether

6    Mr. Weinman, since it's his motion, intended to go first, but at

7    least I wanted to give you the nature of the lawsuit.

8           THE COURT: That would be helpful.

9           MR. BALIS: It's an automobile accident, Your Honor --

10          THE COURT: Okay.

11          MR. BALIS: -- in which the debtor was rear-ended by

12   the tortfeasor and suffered significant injuries which have now

13   rendered him totally and permanently disabled.  He was an

14   emergency room physician at the time of the accident.

15          THE COURT: Okay.  Thank you.

16          MR. BALIS: I'm prepared to address all of the other

17   issues, as well as some of my own.

18          THE COURT: Why don't you tell me why the debtor cares

19   if the debtor doesn't want to pursue it.

20          MR. BALIS: First of all, Your Honor, as we indicated in

21   our objection, it is the debtor's position that this entire claim

22   is exempt.  That the issue of whether even the -- even 25 percent

23   of the prepetition wages are estate property, to say nothing of

24   the issue Your Honor has raised.

25          THE COURT: And what -- does anybody have any idea of a

1    ballpark for the prepetition wages that were lost?

2          MR. BALIS: Well, we can make an offer of proof.  I can

3    ask the debtor how much he was --

4          THE COURT: You know, I'm just talking a complete

5    ballpark, is all I'm --

6          MR. BALIS: Well, we know the accident occurred in April

7    of 2001, and we know that the case was filed here in July of

8    2005.

9          THE COURT: Oh, so that's a substantial period of time.

10          MR. BALIS: It is.

11          THE COURT: Okay.

12          MR. BALIS: We know that the debtor was -- I'll use the

13    word highly compensated as an emergency room physician.  So I

14    think it's fair to say that the claim for prepetition lost wages

15    may be substantial.

16          THE COURT: Okay.

17          MR. BALIS: So I think all -- of the objections we

18    raised, there being three, the first being that the claim is

19    fully exempt would dispense with the problems associated with the

20    second two parts of my objection.

21          The second piece being the difficulty of trying to

22    allocate among the various pieces of the proceeds of the claim

23    for personal injuries between that which belongs to the debtor

24    and that which may belong to the trustee, and the difficulties of

25    processing the case, whether it be to trial or settlement, and

5

1    the final argument being the disinterestedness argument of Mr.

2    Gunglesberger (phonetic) and the irreconcilable differences the

3    debtor feels with his former counsel, and which --

4         THE COURT: Okay. But my question was: There were

5    several statements in here, and maybe it's no longer true, that

6    the debtor has no intention, doesn't want to pursue this lawsuit

7    at all.

8         MR. BALIS: That is his present position, Your Honor.

9         THE COURT: But he wants to preserve the ability to

10   change his mind and pursue it later?

11        MR. BALIS: Perhaps.  I mean, the way he sees it right

12   now is he is so adverse to Mr. Gunglesberger he certainly doesn't

13   want this case to be prosecuted basically for his benefit, nor

14   for the benefit of the -- whether we call the lend -- the

15   creditor in this case, Whitehaven, a secured creditor, whether we

16   call them an assignee, as counsel stated in his supplemental

17   response, and try to figure out the respective rights of that

18   entity depending upon whether it has a lien on the file or an

19   assignment of the claim.

20        They are owed a significant amount of money.  As an

21   offer of proof, we believe there is a $300,000 insurance policy.

22   And as the debtor sees it, the significant time, emotional

23   strain, potential expense of having to go to trial when the

24   beneficiaries would be, (a), the attorney that he has fired, he

25   thought, (b), the lender who loaned him $35,000 is now owed like

6

1    $120,000, and then the remaining piece, if any for himself, is

2    just not worth it.

3            But I would like the Court to focus, if I may, on the

4    issue of exemption, because I think that may resolve why the --

5    whether the Court needs to even understand why he feels the way

6    he does, whether there's disinterestedness. So let me just cite,

7    if I may, and approach the bench, if I may, with two documents.

8            THE COURT: You may.

9            MR. BALIS: Thank you.

10            THE COURT: (Pause) Thank you.

11            MR. BALIS: In 1985, Judge Brumbaugh took up the issue

12    of what is subsumed under the term proceeds of personal injuries.

13    This was quite an interesting case in which the debtor in this

14    case had a significant personal injury case, I believe a Dalkon

15    Shield case, against various drug manufacturers. Sort of just an

16    interesting case to read. What happened was the debtor saw Mr.

17    Zimmerman, the Court may be familiar with Steven Zimmerman, and

18    paid him -- or at least owed him $75 for a consultation. He then

19    hired another lawyer to handle his bankruptcy case in the

20    Keyworth (phonetic) case which I'm citing to.

21            And I may have given the Court the beginning of my --

22    no, I haven't. It's 47 BR 966, Judge Brumbaugh in 1985. Merck

23    bought Mr. Zimmerman's claim for $50, and then proceeded to

24    object to the claim of exemptions. There was roughly a

25    $7 million claim in the case. Judge Brumbaugh decided that Merck

1    did not have standing to object.  But in his opinion, I guess

2    we'll call it dicta, he was quite clear when he said, and you'll

3    see it on page 6, Although these findings are dispositive of the

4    matter pending before the Court, the crucial significance of the

5    issues raised by Merck should be addressed because of their

6    relevance and the likelihood of recurrence in bankruptcy cases.

7    The question is one of interpretation of the term personal

8    injuries under 1354 1021(n).  No one argues that the term

9    includes at least bodily injuries suffered by a debtor, but it

10   also includes something more.  He then cites Colorado jury

11   instructions second, 6.1, and I've given the Court Colorado jury

12   instructions, now 4.0, I believe, which is virtually identical in

13   instructing juries as to what is included in a personal injury

14   claim.

15            Personal Injuries - Adults.  Quote: We find in

16   determining damages for personal injuries, the jury is instructed

17   to consider the nature and extent of the injuries, any loss of

18   earnings or physical impairment of earning capacity incurred

19   before trial, and any physical or mental pain and suffering

20   endured before trial, and any reasonable and necessary medical or

21   other expenses incurred occasioned by such injuries.

22            And then the Court goes on to talk about future

23   earnings, future physical or mental pain and future medical

24   expenses.  Judge Brumbaugh again then says, It should be noted

25   that counsel have cited numerous cases interpreting the term,

1    quote, personal injury, under Colorado Workman's Compensation

2    Act, CRS 8-40-101 et seq.  Such cases are not persuasive in the

3    present inquiry.  The Courts when interpreting said Act have

4    narrowly construed the term personal injury in order to effect

5    the legislative intent of that statute.

6         Conversely, the exemption statute must be liberally

7    construed in order to give full effect to the legislative intent

8    of providing a fresh start.  He then cites to a case in -- of

9    Reins (phonetic) versus Mullen.  Jury instruction 6.1 is

10   derivative from numerous Colorado state court decisions predating

11   Colorado's opt-out.  It must be presumed that the state

12   legislature was aware of the existing law when it exempted the,

13   quote, proceeds of any claim for damages or personal injuries,

14   close quote.  He then goes on, Therefore, to allow the exemption,

15   and then the rest of decision is about the various claims that

16   were made including wrongful death which the Court decided was

17   not subsumed under proceeds of any claim for damages for personal

18   injuries.

19        So it is the debtor's position that -- it isn't lost

20   wages, Your Honor.  The debtor hasn't lost wages like in a case

21   where wages haven't been paid to him, a discrimination case, say.

22   He was paid his wages for all the days he worked.  What he has is

23   a claim for compensation of wages.

24        THE COURT: Which are earnings, lost earnings.

25        MR. BALIS: Yes.  But it is compensation, not actual

9

1    lost wages.  And I would state to the Court -- and if we need to

2    have an evidentiary hearing on this matter, I'll put on an expert

3    witness who will testify that lost -- that in a personal injury

4    case, you don't pay income taxes on the, quote, compensation for

5    lost wages.  You don't pay Social Security taxes because they're

6    compensation, they are not actual lost wages.

7         Judge Brumbaugh also goes on to say that in answering

8    the constitutional question raised in this case, which he found

9    the statute to be constitutional, that the federal statute is

10   smaller.  It doesn't cover as much, and it's much smaller in

11   amount.  And the federal statute uses the term personal bodily

12   injuries, which the Colorado statute does not.

13        So for all of these reasons, Your Honor, we believe

14   that -- and I've given you the current Colorado jury instructions

15   -- that the term proceeds of personal injury includes all of

16   these things.  The trustee isn't asking for authority to hire

17   counsel to pursue medical reimbursements, which we would concede

18   there is no exemption for.  And we would also put on as a matter

19   of -- of an offer of proof that they are quite minor.  I think

20   all of the -- or relatively all of the debtor's medical expenses

21   have been paid.  So it is exempt.

22        Secondly, how would we even go about trying to settle

23   this case if the trustee is authorized to pursue it and we have

24   to divvy up this 300,000?  Who will decide how much to allocate

25   to pain and suffering versus pre or post lost wages?  I would

10

1    submit there is no effective way to do that.

2              Additionally, who is going to be the plaintiff in this

3    litigation?  The trustee?  Can the trustee pursue this without

4    the debtor?  Not only with reference to the practicalities of

5    that, can the debtor be forced to travel back to Connecticut to

6    participate?   More importantly, if the debtor is involved, how

7    -- can the debtor be forced to incur postpetition obligations,

8    such as costs of plaintiff, to say nothing of the possibility of

9    a defense verdict in which plaintiff could be hammered for all of

10   defendant's costs?  I don't think the trustee --

11             THE COURT: How would that go against the debtor?

12             MR. BALIS: Well, that's what I'm asking.  If the debtor

13   is the plaintiff in the case, the debtor could be responsible for

14   the -- for a defense verdict.  If the debtor is the plaintiff in

15   the case -- I mean, I'm sorry, if the trustee is the plaintiff in

16   the case -- and I would add this is not a solvent estate, I don't

17   think there are any other assets in this estate -- what would

18   happen with a defense verdict?

19             We  haven't  touched yet upon the issue of the

20   irreconcilable  difference  between  the  debtor  and  Mr.

21   Gunglesberger, who the debtor feels has not been truthful with

22   him, that he has tried to discharge on several occasions, who has

23   not in his application disclosed to the Court his status as a

24   creditor in this case.  For all of these reasons, Your Honor,  we

25   believe that the -- that the motion should be denied.

11

1          THE COURT: Thank you.

2          MR. BALIS: Thank you.

3          THE COURT: (Pause) All right.  This is a lengthy

4    docket.  I assume that the debtor claimed the personal injury

5    claim as exempt on his Schedule C --

6          MR. BALIS: Yes, he did, Your Honor.

7          THE COURT: -- and the trustee did not object.

8          MR. BALIS: That's correct, Your Honor.

9          THE COURT: Okay.  Thank you.

10          MR. BALIS: I would add, though, that I don't think the

11    trustee perhaps understood the debtor was saying it's a ball

12    mine, and maybe if we had said that in some way, although the

13    schedules don't require it, perhaps there would have been an

14    objection.

15          MR. WEINMAN: I think that that really kinds of begs the

16    issue --

17          THE COURT: Well, I --

18          MR. WEINMAN: -- because he --

19          THE COURT: Let me -- would you pull up the Schedule C

20    for me, please?

21          MR. WEINMAN: He did claim a hundred percent of the

22    personal injury claim.  But at the heart of this argument is --

23          THE COURT: You make sure you're at the podium.

24          MR. WEINMAN: -- is the lost earnings or wages part of

25    the personal injury claim?  Really, if your decision were that it

12

1    is, then I lose on both counts.

2                    THE COURT: Well, why would I ever get there --

3                    MR. WEINMAN: But if it's not --

4                    THE COURT: -- I mean, if I understand the Supreme Court

5    right -- and I can never cite case names for you -- if you don't

6    object timely to an exemption, and maybe there's no basis for an

7    exemption, but you don't object timely, it's bulletproof, isn't

8    it?

9                    MR. WEINMAN: Yes, but it's semantics.  Is the entire

10   claim a personal injury claim?

11                   THE COURT: Okay, without --

12                   MR. WEINMAN: It really --

13                   THE COURT: -- let me -- let me pull up the exact

14   language --

15                   MR. WEINMAN: Yeah.

16                   THE COURT: -- of what was in Schedule C then.

17                   MR. BALIS: I think it's a personal injury claim,

18   actually. So.

19                   THE COURT: Were they filed with the original petition?

20   I see an amended Schedule D but --

21                   MR. WEINMAN: Yes, that's where we amended to claim the

22   Whitehaven as secured.

23                   THE COURT: But the C is what I want to look at.

24                   MR. WEINMAN: Yeah, C and --

25                   THE COURT: Here we go.

13

1     MR. WEINMAN: -- I'm sure the Court will get it.

2     THE COURT: Okay.  All I see -- oh, here we go.

3   Personal injury claim uncollectible, and the statute cite a

4   hundred percent, and then it says the value's undetermined.  But

5   it is saying personal injury claim a hundred percent.

6     MR. WEINMAN: But I ask you to consider where you're --

7   where you seem to be headed.  What's to keep him from saying that

8   anything is subsumed by his personal injury claim?  And, if the

9   trustee doesn't object, then he can't attack it.

10    THE COURT: Wait a minute.  He's claiming various kinds

11  of damages attributable to a personal injury accident.

12    MR. WEINMAN: Where does it say that?

13    THE COURT: Well, it says personal injury claim.

14    MR. WEINMAN: Claim.

15    THE COURT: And so you're saying --

16    MR. WEINMAN: I'm saying it --

17    THE COURT: -- somebody has to parse out every piece of

18  compensation they're seeking in their Schedule C?

19    MR. WEINMAN: I believe so.  I believe when you're

20  talking about a personal injury claim -- I mean, Mr. Balis

21  himself acknowledged that reimbursement of medical expenses is

22  clearly not exempt.

23    THE COURT: Per the statute that they claim under.

24    MR. WEINMAN: Per the -- per the personal injury

25  statute?

1          THE COURT: Right. Well, the statute that exempts
2    personal injury claims has an exception in it for medical
3    expenses.
4          MR. WEINMAN: Okay. I'm not -- I'm not sufficiently
5    familiar. I thought it was a -- I thought there was a separate
6    statute with respect to medical expenses, it's not --
7          THE COURT: Would you grab me that sheet that's
8    (inaudible).
9          MR. BALIS: Your Honor, I think the exact language is
10   except to the extend it represents reimbursement for medical
11   expenses.
12         THE COURT: We'll pull the statute.
13         MR. BALIS: Okay.
14         THE COURT: That's my recollection of it as well.
15         MR. WEINMAN: But --
16         THE COURT: So --
17         MR. WEINMAN: -- I'm sort of straying off the point
18   here. The whole point of this is what is included within per' --
19   within the notion of personal injury, and that would be exempt
20   for two reasons. One, for failure to object to it, and, two,
21   even if I had objected to it, you would -- you would arguably
22   determine that any future wage losses are part of personal
23   injury.
24         But if future wage losses are not part of personal
25   injury, his listing a personal injury claim as being exempt does

15

1   not preclude the trustee from seeking a recovery.  It's kind of

2   circular to --

3          THE COURT: But the logic, if I'm following it, is that

4   every debtor who has a personal injury claim needs to list every

5   component of that claim on their Schedule C before the trustee's

6   put on notice of any objection he might have.

7          Am I -- is that logic accurate?

8          MR. WEINMAN: I think that's right.  If -- because you

9   could -- you could argue at any point in time that -- I can't

10  think of a good example, but something that clearly would not

11  otherwise be exempt is part of the claim.  And how does the

12  trustee know that that's the claim until after the fact and the

13  30 days is gone?

14         THE  COURT:  But  what are -- what's an example of

15  something that you're worried about that somebody could try to

16  lump in with the personal injury claim?

17         MR. WEINMAN: How about wages?

18         THE COURT: Well, that is a component of a personal

19  injury -- I mean, it could be.

20         MR. WEINMAN: Well, that -- that -- you're sort of

21  making the decision.

22         THE COURT: He's saying here there were no unpaid wages

23  for actual time he worked.  He has a loss of earnings, and he's

24  arguing that that's compensatory and it's not wages per the wage

25  statute that allows you to garnish 25 percent.

1      MR. WEIMAN: But you would have to decide that his

2      notion of that reading of the statute is correct in order for you

3      to then decide that I should have objected.  I have a kind of a

4      different concept here, and let me just recite what I think sort

5      of muddies the waters and why I don't think that it should be

6      exempt under the wage provision.

7          If you -- if you had a claim for loss of wages, whether

8      it was personal injury or otherwise, out into the future --

9      future meaning beyond the time you would have filed bankruptcy --

10     all right?

11     THE COURT: Meaning postpetition.

12     MR. WEINMAN: Postpetition.  But you brought the suit

13     before the bankruptcy was filed, and, in fact, you recovered a

14     judgment or a settlement before the bankruptcy was filed, and the

15     money was sitting in a bank account, how could you -- how could

16     you say that these are future wages?  Aren't they really a

17     settlement of a claim prepetition for damages which arose

18     prepetition, and why should the filing of the bankruptcy be the

19     point in time at which you measure the damages?  Shouldn't it be

20     when the claim arose?

21         To me there is no real -- there shouldn't be any real

22     distinction between the filing date and the -- excuse me, the

23     earning date -- and the accrual of the right to claim that amount

24     as damages.  If it's prepetition, the whole thing is prepetition.

25     You might disagree, but I see -- I see the date the claim arose

1    as being the key date, not the date for which the damages are

2    arguably paid, because you can, in fact, have possession of funds

3    for future earnings in the present.

4           THE COURT: I'm seeing some very interesting issues and

5    arguments to be raised on the future earnings aspect, and I have

6    always been mindful and troubled by that because trustees often

7    try to glom onto this, rightfully or wrongfully, and so we've

8    done a fair amount of research on this. But I'm still not

9    certain that this is the case where I need to resolve that issue,

10   given the lack of an objection to an exemption. So now I'm going

11   to go back to you, Mr. Weinman, and ask you: Do you have any

12   authority for your position that in order for a debtor to exempt

13   a personal injury claim, they need to delineate every aspect of

14   compensation they would potentially seek to recover in the

15   personal injury claim?

16          MR. WEINMAN: I don't have any authority for that, but

17   I would like to -- I'd like to analyze for you the usage of the

18   wording in the statute which, to me, is very interesting, and

19   maybe there's a nuance in there.

20          THE COURT: Okay.

21          MR. WEINMAN: I'm seeing that really doesn't exist and

22   you'll tell me that. But the lang' -- the statute says for

23   personal injury. It doesn't say from personal injury. And to me

24   there's a big difference between for and from. For personal

25   injury means because of the injury. From would suggest anything

1    flowing from the injury itself.  And the for -- the for word, the

2    F-O-R, is a much more restrictive use of language than a from

3    utilization.

4            And so I'm really sort of back to my earlier argument

5    that --

6            THE COURT: How would that play out?  How -- what's a

7    possible construction of the difference in those two word

8    choices?

9            MR. WEINMAN: Loss of consortium, pain and suffering.

10           THE COURT: So -- so wait.  So damages for personal

11   injuries would not include loss of consortium, is that your --

12           MR.  WEINMAN:  Would  --  for  would  --  directly

13   attributable to the bodily injury, although Mr. Balis suggests

14   that --

15           THE COURT: But -- but if it had said a claim for

16   damages from personal injuries, that would not include the loss

17   of consortium?  Is -- am I understanding correctly?

18           MR. WEINMAN: No, it likewise would.  I'm saying that

19   from would include wages and all kinds of consequential damages,

20   which is what compensation is.

21           THE COURT: But for does not?

22           MR. WEINMAN: For -- I don't think for does.  I think

23   for relates directly to the injury itself.  The collision, the

24   fall, whatever the case may be.

25           THE COURT: Any case law that would help me reach that

19

1    sort of construction?

2              MR. WEINMAN: You know, I can't find any meaningful case

3    law under the statute --

4              THE COURT: Which --

5              MR. WEINMAN: -- to be honest with you.

6              THE COURT: -- is not surprising in Colorado.  There's

7    not a lot of reported decisions.

8              MR. WEINMAN: And had I had the time, I probably could

9    have spent months on this issue.  It's really quite fascinating.

10             THE COURT: How about outside of Colorado anywhere where

11   the use of for versus from in a similar context?

12             MR. WEINMAN: Can't -- can't say that I've researched

13   that and have --

14             THE COURT: Okay.

15             MR. WEINMAN: -- I've thought about this more than I've

16   researched it, and I suppose that's not very helpful to the

17   Court, but those -- that's a distinction that I saw that is maybe

18   a distinction without a difference and maybe it has a big

19   difference.  It could just be a total nonconsideration in the

20   drafting of it whether you use the word for or from.

21             THE COURT: What about the fact that we do know from a

22   lot of Colorado case law we're supposed to construe these

23   exemption statutes liberally.  How does -- how does that play in?

24             MR. WEINMAN: That's clearly -- that is clearly the case

25   law and that's reiterated case after case after case.  And there

1    is a point at which you've got to stop all the (inaudible)

2    interpretation.  I have another case, it's -- maybe it will be

3    interesting, maybe it will be boring to you -- but where a debtor

4    is claiming some financial instruments as exempt, 75 percent

5    exempt because he bought them with his wages.  And Judge Tallman

6    has yet to have to rule on that.

7         But if you shout, Hey, we need a liberal construction,

8    it came from his wages, therefore you construe it, and it's

9    exempt.  His house came from his wages, you construe it as

10   exempt, 75 percent exempt instead of $45,000.  You could carry to

11   the extreme any exemption by liberally construing it.  Is this

12   that extreme?  No.  But all I'm trying to suggest to you is in a

13   very close case, if you deem this to be a very close case, I

14   think you would come down on the side -- liberal construction,

15   we're going to go with the side of the debtor as opposed to the

16   trustee's objection.

17        I don't know if this is a very close case or not.  I

18   just don't know.  I don't think the Keyworth case -- the Keyworth

19   case is a nice case, but it is not on point because it is totally

20   dicta.  And I have to say I haven't read it, and I did actually

21   read it when it came out, but I haven't read it in 20 years, so

22   I'm not here to articulate what it says or doesn't say, but I

23   think Mr. Balis acknowledged that is was dicta.  So for purposes

24   of today's argument, I would say it's not the law.

25        You may very well find it to be the law or suggest what

1     the law should be, but I don't think -- I don't think we have a

2     case in Colorado that really defines appropriately this statute

3     and the full breadth of what the exemption includes.  And until

4     we do, I guess a trustee's going to have to object to every

5     personal injury claim without knowing what the heck it includes.

6          THE COURT: This was a claim that was in the original

7     schedules, right, so available to the trustee at the time of the

8     creditor's meeting?

9          MR. WEINMAN: Yes, I believe it was, and I think there

10    was some discussion at it as well -- of it as well at the 341,

11    and the emphasis was on the collectibility of it and it's just a

12    waste of time.

13          And, you know, the debtor sort of persuaded me of that,

14    but then I got some frantic phone calls from Mr. Gunglesberger

15    and he persuaded me that maybe there's something to it.  That's

16    the nature of a trustee's practice, so...

17          THE COURT: Thank you.

18          MR. WEINMAN: Okay.

19          THE COURT: Mr. --

20          MR. WEINMAN: I don't really have anything to add, I

21    don't think, other than the arguments about the practicality.

22    There may be huge practical issues with this claim, but I don't

23    think that has anything to do with whether it's exempt or not.

24    And were the Court to rule in the trustee's favor, I would

25    definitely consider -- reconsider who I employed, because I

22

1    wasn't aware until after this motion was filed of the

2    dissatisfaction with Gungelsberger to the extent that it exists.

3           But, again, that is really -- comes up in that context,

4    but that's not really the -- the main issue here I don't think.

5    Thank you, Your Honor.

6           THE COURT: Okay.  Thank you.  Mr. Shafferman?

7           MR. SHAFFERMAN: Your Honor, as we set forth in our --

8    in our pleadings, we have no objection to the retention of the

9    counsel.  Certainly, again, if the counsel is unable -- if the

10    debtor is unable to work with the counsel, then, of course, we

11    would have no objection to alternate counsel.  We just wanted to

12    -- while this issue of the personal injury action was first

13    raised in those motions, we wanted to get on everyone's radar

14    screen, so to speak, and alert the parties and the Court and the

15    trustee that Whitehaven has an assignment of a portion of the

16    proceeds of the action as set forth in the agreements and

17    documents that are filed with the court and that any, you know,

18    issues raised should be considered in the context also of

19    Whitehaven being a party in that respect, and that was -- that

20    was our point, and we have had actual discussion with both

21    parties before this hearing on the phone.  And, Your Honor, I

22    really have nothing to add except to state that all for the

23    record.

24           THE COURT: Okay.  Very good.  Thank you.

25           MR. SHAFFERMAN: Thank you.

```
1          THE COURT: All right.  This matter comes before the
2    Court solely on an application to employ a particular law firm as
3    special counsel to the trustee for the sole purpose of pursuing
4    a certain piece of litigation brought by the debtor prepetition,
5    which is in the nature of a personal injury lawsuit relating to
6    a car accident that occurred prepetition.
7          The debtor has listed on his Schedule C from the outset
8    in this case a personal injury claim, uncollectible, and he cites
9    the relevant statutes, and he claims that a hundred percent of
10   that claim is exempt and indicates its value as undetermined.
11         The Court is unpersuaded, despite the good arguments of
12   the trustee, that that is an insufficient attempt to exempt this
13   claim in its total.  I have been given no authority that tells me
14   that I need to instruct debtors that they must list out every
15   potential aspect of a claim in order to exempt all of the claim.
16   And I think it's commonly understood that personal injury claims
17   will involve economic and noneconomic damages.  And to the extent
18   a trustee believes that he has the right to pursue as an asset of
19   the estate a portion of the economic damages, he's on notice that
20   he should file an objection.
21         And so that did not occur here within the time required
22   by law, and so I don't have to reach and nor am I going to reach
23   the  very  interesting  issues  that  are  out  there  in  our
24   jurisdiction and are crying out to be decided, but I don't think
25   they are going to be in this case, and that has to do with the
```

24

1  economic damages and whether those are -- and to what extent they
2  are exempt.  That will have to be for a case where an objection
3  to an exemption is timely brought.
4        So for those reasons, since the whole reason to appoint
5  special counsel is to pursue a lawsuit that I am finding the
6  trustee not to have standing to bring, I'm going to deny the
7  application on that basis.  So thank you all.
8        MR. WEINMAN: Thank you.
9        MR. BALIS: Thank you, Your Honor.
10        THE COURT: Thank you for the good arguments of counsel.
11        MR. SHAFFERMAN: Thank you.
12        THE CLERK: All rise.
13        THE COURT: We'll stand in recess.
14
15        (Whereupon, the within hearing was then in conclusion
16  at 3:26 p.m. on this date.)
17
18        I certify that the foregoing is a correct transcript,
19  to the best of my knowledge and belief, from the record of
20  proceedings in the above-entitled matter.
21
22  _____          7-14-06
                                             _____
23        Signature of Transcriber                Date
24
25

AVERY/WOODS REPORTING SERVICE, INC.
455 SHERMAN STREET, SUITE 250, DENVER, CO  80203
303-825-6119    FAX 303-893-8305